KATHERINE OTTE v. HARTFORD LIFE INSURANCE COMPANY.[1]

January 30, 1903.

Nos. 13,304—(207).

### Authority of Insurance Agent.

When a foreign life insurance company has a general manager for this state, with authority to appoint canvassers to be paid by the manager, such canvasser, while engaged in taking applications on blanks furnished by the company, is the agent of the insurer, and his acts within his apparent authority are binding upon it.

### Fraud of Agent in Application for Insurance.

Where such an application is made out by the solicitor, and the insured truthfully states the real facts, but the agent writes down his answers incorrectly, and the insured signs the application without knowl-

[1] Reported in 93 N. W. 608.

edge of the fraud, in reliance upon the good faith of the agent, the insurer is not relieved from the liability contract in the policy issued thereon, even though there is a provision in the application attached thereto that the statements of the insured therein shall be considered as warranties.

### Acceptance of Policy.

In such case the acceptance of the policy, with the application attached, does not require the insured to institute an investigation into its provisions, or the conditions upon which it was issued, to ascertain whether the agent has acted in good faith, since, under such circumstances, the insured may rely upon the presumption that he has been honestly dealt with by the insurer.

Action in the district court for Dakota county to recover $1,500 and interest upon a life insurance policy. The case was tried before Crosby, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Tryon & Booth,* for appellant.

The statements made in the application were warranties, first, because expressly so stated therein; second, because that would be the legal effect of making the application a part of the policy itself. This rule has been repeatedly recognized by this court. Stensgaard v. St. Paul R. E. T. Ins. Co., 50 Minn. 429, 435; Cerys v. State Ins. Co., 71 Minn. 338; Cushman v. U. S., 63 N. Y. 405; Foot v. Ætna, 61 N. Y. 571. But whether the statements contained in said application were warranties or representations, if false, they would, in the present case, avoid the policy. Price v. Phœnix Mut. Life Ins. Co., 17 Minn. 473 (497); Chambers v. N. W. Mut. Ins. Co., 64 Minn. 495; Bruce v. Connecticut Mut. Life Ins. Co., 74 Minn. 310; Perine v. Grand Lodge A. O. U. W., 51 Minn. 224; Rhode v. Metropolitan, 129 Mich. 112; Smith v. Ætna, 49 N. Y. 211, 215, 216. Knowledge on the part of the solicitor taking the application of a different state of facts from that set forth in the application, would, under the circumstances of the present case, make no difference even if such knowledge had been proven. The legal effect of such statements would remain the same; first, because

of the express agreement to that effect in the application; second, because such is the legal effect of signing the application. New York v. Fletcher, 117 U. S. 519; Maier v. Fidelity Mut. Life Assn., 78 Fed. 566; U. S. Life Ins. Co. v. Smith, 92 Fed. 503; May, Insurance, §§ 144 F., 144 G., 145 A.; Dimich v. Metropolitan, 67 N. J. L. 367; Finn v. Metropolitan., 67 N. J. L. 17; Ryan v. World, 41 Conn. 168; Foot v. Ætna, supra; Barteau v. Phœnix, 67 N. Y. 595; Brown v. Cattaraugus, 18 N. Y. 385; Alexander v. Germania, 66 N. Y. 464; Chase v. Hamilton, 20 N. Y. 52; Insurance v. Pyle, 44 Oh. St. 19.

The fact that Otte received and kept the policy of insurance in his possession from December, 1900, to May, 1901, with a copy of the application attached, containing the false answers, binds him as having adopted the answers as his own, whether false or true. It is no defense in such case that the deceased did not read the policy. Reynolds v. Atlas Accident Ins. Co., 69 Minn. 93; New York v. Fletcher, supra; Johnson v. Dakota, 1 N. D. 167; Quimby v. Shearer, 56 Minn. 534; Wilkins v. State Ins. Co., 43 Minn. 177; Bostwick v. Mutual, 116 Wis. 392. Even where a party gives correct answers, and the insurance agent puts false ones in the application and a copy of the application is attached to the policy thereafter issued, it is held that the policy is void. New York v. Fletcher, supra; Maier v. Fidelity Mut. Life Assn., supra; U. S. Life Ins. Co. v. Smith, supra; May, Insurance, §§ 144 F., 144 G., 145 A. And even in case of collusion between the insurance agent and the applicant, for the purpose of defrauding the company, the principal is not bound. May, Insurance, § 133 B.; National v. Minch, 53 N. Y. 144; Elliott, Insurance, § 190; Hanf v. Northwestern, 76 Wis. 450.

*Ernest Otte* and *William Hodgson*, for respondent.

There was no ambiguity about the provisions of the application, and it was the duty of the court to determine from the contract what was material to the risk. Price v. Phœnix Mut. Ins. Co., 17 Minn. 473 (497). When an insurance agent, authorized to procure applications for insurance and to forward them to the company for acceptance, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant,

the error is chargeable to the insurer and not to the insured. It was competent under the contract at bar to prove that the assured fully informed the soliciting agent of his condition, and that the agent at the time of the contract had actual knowledge that assured was afflicted with diabetes, and had consulted physicians and received treatment therefor. Brandup v. St. Paul F. & M. Ins. Co., 27 Minn. 393; Kausal v. Minnesota F. M. F. Ins. Co., 31 Minn. 17; Wilson v. Minnesota F. M. F. Ins. Assn., 36 Minn. 112; Whitney v. National Masonic Accident Assn., 57 Minn. 472; Insurance Co. v. Wilkinson, 13 Wall. 222; Rowley v. Empire, 36 N. Y. 550; Viele v. Germania, 26 Iowa, 9; Kettenbach v. Omaha, 50 Neb. 846; Van Houten v. Metropolitan, 110 Mich. 682; Beebe v. Ohio, 93 Mich. 514; Stone v. Hawkeye, 68 Iowa, 737. Insurance companies cannot shield themselves by inserting in their policies a condition that the soliciting agent shall not be considered the agent of the company. Reiner v. Dwelling House, 74 Wis. 89; Lamberton v. Connecticut Fire Ins. Co., 39 Minn. 129; Dick v. Equitable, 92 Wis. 46; Improved Match v. Michigan, 122 Mich. 256; Jamison v. State, 85 Iowa, 229; 16 Enc. Law (2d Ed.) 946.

LOVELY, J.

Action on a life insurance policy issued to William Otte, since deceased. His widow is the beneficiary. The cause was tried to the court and a jury. There was a verdict for plaintiff. A motion for judgment, or a new trial in the alternative, was overruled. From this order defendant appeals.

The insured was a farmer living near Randolph, in this state. One E. L. Hills was acting as a canvasser for defendant. Late in November, 1900, he went to the home of Otte, and requested him to apply to defendant for a policy on his life. As a result of Hills' solicitations, he was authorized to make out Otte's application for a policy in defendant's company for $1,500. The application contained questions relative to Otte's health. The answers were written therein by Hills. It was signed by Otte, and forwarded by Hills to the general manager of the company for Minnesota, located at Minneapolis, who then sent it to the general office, at Hartford. In due time the risk was accepted, and a policy issued,

which was delivered to the insured, who paid the premium. In the application were the following questions and answers:

"Q. Are you now in sound physical and mental health, so far as you know? A. Yes. Q. How much time have you lost by sickness during the last three years, for which you were attended by or consulted a physician? A. None. Q. When did you last consult a physician? A. Never. Q. For what disease? How long were you sick? Fully recovered? A. None. Q. What are the names and addresses of every physician consulted in the last three years? A. None. Q. Have you now, or have you ever had any of the following diseases? If so, give the dates and full particulars. If not, answer 'No.' Asthma, difficulty in breathing, pleurisy, pneumonia, consumption, chronic or persistent cough, spitting of blood, or any lung disease? A. No. Q. Diseases of the liver, kidneys, bladder, enlargement of the prostate gland, renal or hepatic colic from stone or gravel? A. No."

There was attached to the application a certificate for the physician of the company, Dr. Woodward, of Cannon Falls, who was required to examine the applicant and certify to his state of health; but Hills, who was a physician, inserted the answers therein, and carried it to Dr. Woodward, who, at such request, approved and signed the same, relying upon the statements of Hills, instead of an examination by himself, as required by the regulation of the company, which regulation was not known to Otte.

The legal relation of Hills to the insurer and insured is an important subject of contention in determining the liability of defendant. But the facts are not in dispute. Previous to the application, defendant had appointed Samuel Johnson its general manager for Minnesota, to reside in Minneapolis. The manager was authorized to take applications for life insurance, and forward the same to the home office, in Hartford, for action. He was not, however, the only person soliciting insurance for defendant in his territory, for he was authorized by the company to appoint solicitors to canvass for applications, under terms of compensation to be paid by him. Upon this authority, Johnson appointed Hills to solicit insurance for defendant, and furnished him with blank applications for that purpose. Hills entered upon and continued in such employment for over two months, with the approval

of the general officers of the company, and it was during this time that Otte was insured. On the application the name of Hills appeared as a witness, which was recognized by defendant's secretary at the home office as evidence of the fact that he was a solicitor acting under authority derived from Johnson. Hills' name as agent was also indorsed on the back of the policy, though it may have been placed there by the manager or by Hills himself.

While it is conceded that insured had consulted several physicians within three years previous to the application, and was informed by each of them that he was afflicted with diabetes,—a dangerous malady, affecting his health and insurable capacity,—there was evidence, whose weight was for the jury, tending to show that, at the time Hills was making out the application, he was informed of these material facts. In reply the solicitor continued to persuade Otte to make the application, and substantially told him that he was a good risk, and that diabetes would not prevent him from obtaining insurance. The evidence is such in respect to the questions and answers quoted that the jury were justified in finding that none of them, as to the previous information from the physicians he had consulted, was misrepresented, or that he knew he was suffering from a dangerous disease that would interfere with his obtaining a policy. In these respects the insured relied wholly upon the agent, and signed the application without reading it or with knowledge of its contents, believing that the true facts conveyed to the solicitor were either set forth therein, or were not required to be stated. Five months after the delivery of the policy to the insured, he died; and the evidence is such as to leave no doubt that at the time the application was made, and the policy written, he was afflicted with diabetes, which disease was the efficient cause of his death.

It is strenuously insisted for defendant that Hills, in writing the application, was not the agent of the company, but merely an insurance broker, and that, in the legal sense in which this term is understood, he was the agent of the insured, as in Gude v. Exchange Fire Ins. Co., 53 Minn. 220, 54 N. W. 1117; hence that his acts could not bind the defendant. But upon the facts as above summarized, we are of the opinion that it was within the

authority of Hills to take applications, and to do that which is usual and customary among insurance solicitors receiving their authority directly from the company they represent. The defendant could not transfer its authority to receive applications to a general manager, with power to appoint solicitors, and thereby absolve itself from the necessary consequence which follows, or from the acts of the latter within his apparent authority. The general agent at Minneapolis having the power to appoint Hills to canvass, he might, according to the usual custom among those engaged in the business of canvassing for insurance, write out the application and the answers to questions put to the applicant; and, though his appointment did not come directly from the company, this could make no difference, since it did come from the defendant through the delegated authority conferred upon the Minnesota manager to appoint the subagent who was clothed with the necessary and essential power to do that in taking the application which the manager might have done had the latter been present and written the application himself. Swain v. Agricultural Ins. Co., 37 Minn. 390, 34 N. W. 738.

And this brings us to the question whether the incorrect and untruthful statements made by the solicitor, Hills, bound the company. We have already held that agents of an insurance company, authorized to procure applications for insurance, and forward them for acceptance, must be deemed the agents of the insurer in all that they do in preparing the application, or in any representations they may make in the material statements therein contained. Kausal v. Minnesota F. M. F. Ins. Assn., 31 Minn. 17, 16 N. W. 430; Wilson v. Minnesota F. M. F. Ins. Assn., 36 Minn. 112, 30 N. W. 401; Whitney v. National M. A. Assn., 57 Minn. 472, 59 N. W. 943. The admission of verbal testimony to show that the application was filled in by the solicitor, and that the relevant and material facts affecting the risk in this case were correctly stated, but, without knowledge or any fraud of the insured, misstated in the application, was relevant and proper, and cannot be attributed to the insured, under the rule adopted in Kausal v. Minnesota F. M. F. Ins. Assn., supra, where the reasons for this rule are fully discussed, and the general doctrine above announced

applied. There is a conflict upon this question in the courts of this country, but we are not now inclined to depart from the rule we have already adopted, which we regard as salutary and wholesome, since we are satisfied with the reasons given in the above-cited cases. We think the weight of authority approves our views in this respect.

The policy, when received by the insured, had attached to it a copy of the application; and it is insisted that, with a provision therein to the effect that the answers to all questions shall be taken as warranties, the retention of the application by the insured bars recovery. We do not deem it necessary to go further in dealing with this claim than to say that, since the insured is to be treated as having dealt directly with the company when he signed the application, the insurer took it upon itself to make out the application and to answer the questions truthfully; hence it cannot transfer the results of its own misconduct to the innocent victim of its deception, who parted with his money in the belief, induced by defendant, that he was obtaining indemnity; nor can we hold that the insured was bound to suspect a dishonest purpose on the part of the insurer contrary to the dictates of good faith, and all rules of legal presumption, and hence required to institute an inspection of the policy upon its receipt to ascertain if he had been deceived. We have therefore reached the conclusion that, in construing the effect of the provisions referred to, the warranties of the insured must be treated as having been waived. Renier v. Dwelling House, 74 Wis. 89, 42 N. W. 208; Garrett v. Burlington, 70 Iowa, 697, 29 N. W. 395.

In the instructions to the jury, the court said that, if Otte died of consumption not produced by diabetes, then diabetes had nothing to do with his death. It is urged that this instruction was prejudicial, inasmuch as one of the proofs of death indicated that deceased died of tuberculosis (consumption). It was clear from the evidence that at the time of the application the insured did not have consumption or any disease of the lungs, and with reference to this testimony the court further said, among other things, that if consumption was the sole cause of the death of the insured, and it was not produced or caused by diabetes, then the verdict

would be for the plaintiff, unless the jury found that Otte informed the agent of the company that he had diabetes, notwithstanding that disease might have run into consumption or caused consumption, but that if death was caused by diabetes, and the agent of the company was not informed by Otte that he had diabetes, then the plaintiff could not recover.

We think a fair and reasonable construction of the charge in these respects does not go further than that, if insured's death resulted from causes that were falsely represented to the defendant, plaintiff could not recover, but that if his death resulted from diabetes, and this information was given to the defendant by the insured, there might be a recovery if the latter correctly stated the facts to the solicitor, which is in accordance with the legal rights of the parties, as we have already held.

Order affirmed.