## THOMAS et al v. MODERN BROTHERHOOD OF AMERICA.

The medical examiner of a benefit order did not propound to applicant in her examination the question whether she had ever had a miscarriage, but inserted the answer, "No," without her knowledge. Subsequently the question and answer were discovered by her, and both she and her husband called the attention of the person who acted as agent of the order in obtaining the application to the mistake, applicant in fact, having had a miscarriage. Such agent then said that it made no difference and the application with such answer was sent in to the order. **Held,** that applicant having sought to have the application corrected, and having been informed by the agent that it was not necessary, the knowledge of the agent was the knowledge of the order, and it was estopped to set up the falsity of the answer to avoid the policy.

An agent of a mutual benefit order to solicit insurance, forward application, and deliver policies is in effect the general agent of the order, and his knowledge of any fact that might increase the risk is the knowledge of the company.

Applicant for insurance in a mutual benefit order was asked whether she had had any serious illness within seven years, to which she answered, "No." The application also contained the question whether applicant had had a miscarriage, but this was not propounded

to applicant by the medical examiner; he inserting the answer "No" without her knowledge. Later she learned of the question and answer, and told the agent of the order of the mistake, she having had a miscarriage about three years before followed by a severe illness. **Held**, that the two questions were separate and distinct, and applicant was entitled to consider that the question relating to sickness within seven years referred to sickness other than that resulting from a miscarriage, so that having had no other illness than that resulting from the miscarriage her answer to the first question was true.

WHITING, P. J., dissenting.

(Opinion filed, June 18, 1910.)

Appeal from Circuit Court, Yankton County, Hon. E. G. Smith, Judge.

Action by Sylvanus J. Thomas and others against the Modern Brotherhood of America. From a judgment for plaintiffs and an order denying a new trial, defendant appeals. Affirmed.

*French & Orvis*, for appellant. *T. E. Price* and *C. H. Dillon*, for respondents.

CORSON, J. This is an appeal by the defendant from a judgment entered in favor of the plaintiffs and from an order denying a new trial. The action was instituted by the plaintiffs as beneficiaries under a policy of insurance issued to Sarah A. Thomas. The complaint is in the usual form, and the answer of the defendant, after making certain admissions and denials, sets out various clauses in the application for the policy, and also certain clauses in the policy itself, and alleged that the insured made false answers to certain questions propounded to her, and that under and by the terms of the various provisions contained in the application for the policy the policy became void and of no effect. The case was tried to a jury and a general verdict rendered in favor of the plaintiffs, and, in addition thereto, the jury returned answers to certain questions propounded to them, among which were the following: "Did Sarah A. Thomas have during the seven years next preceding September 9, 1905, any disease or severe sickness? A. No. Did Dr. Morehouse read to Sarah A. Thomas the question, 'Have you miscarried and from what cause? A. No."

The errors assigned may be grouped together as follows: (1) That the court erred in overruling defendant's objection made to the introduction of any evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action. (2) That the court erred in the admission of evidence as to the conversations occurring between the insured, her husband, and the agent, Breed, in reference to the answer to one of the questions that had been inserted by the medical examiner without the knowledge or consent of the insured. (3) That the court erred in its instructions to the jury as to the effect of the conversation between the insured and the said Breed, and as to its construction of an answer given by the insured to the interrogatory as to whether or not she had had any serious illness during the preceding seven years.

The objection made at the trial to the introduction of any evidence under the complaint on the ground that it did not state facts sufficient to constitute a cause of action was overruled by the court, and we are of the opinion that the court committed no error in so overruling the objection. The only point apparently made as to the insufficiency of the complaint was that it contained a statement of the facts relating to the insertion of the word "No" as the answer of the insured to the question "Have you within the last seven years had a miscarriage?" and the allegations therein contained that such answer was made by the examining physician appointed by the company without her knowledge or consent, and that she subsequently sought to have the same corrected by an agent or deputy, and states fully what conversations occurred between her and her husband and the said agent in regard to the correction of said statement in the application. It is contended by the appellant that these statements in the complaint affirmatively prove that the statement made in the application was untrue, and that the insured allowed the same to be forwarded to the company by the agent Breed without correction, and is therefore precluded from any right of recovery in this action under the various provisions of the charter, by-laws, application, and policy or certificate issued by the company. In the view we take of

the case, it is not necessary to set out the proivsions of the by-laws, application, and policy bearing upon this subject, as they are the usual provisions in life insurance policies providing that any false statement made by the parties shall render the policy void. This objection will be more fully considered in connection with the objection that the evidence of · the conversation occurring between the insured and her husband and the agent, Breed, was inadmissible, and that the court, therefore, erred in overruling the defendant's objection to the same. On the trial the plaintiffs offered evidence tending to prove that the question as to the miscarriage of the insured was never in fact propounded to her by the medical examiner, but that the answer thereto was written by the medical examiner as "No" without the knowledge or consent of the applicant; that subsequently, however, this question and answer came to her knowledge, and that both she and her husband called the attention of Mr. Breed to the mistake, he being the person who acted as agent of the defendant company in obtaining the application, and forwarding the same to the defendant company; and that when the agent, Breed, was informed of the fact, he replied that it made no difference, or words to that effect, and that the application in that condition was forwarded to the office of the defendant company. This evidence was objected to as inadmissible, but the objection was overruled by the court and the same admitted. It is contended by the appellant that this evidence was inadmissible, as Breed had no authority to waive any of the provisions of the application or policy, but we are of the opinion, after careful examination of the terms of the contract under which the agent, Breed, was acting, that he occupied the position of a soliciting agent, and that his knowledge as such was the knowledge of the company.

It is contended by the appellant that the answers to these questions constituted warranties; that the answer to the question relating to a miscarriage as forwarded to the company was untrue, and that the insured had within about three years prior to the application for the policy a miscarriage resulting in serious illness. It is contended by the respondents that Mr. Breed, who took

the application for the insurance and forwarded it to the company, was a general agent of the company, and having been fully informed by the insured and her husband that the insured had had a miscarriage within the time specified in the application, and stated to her, in effect, that it was not necessary to correct that statement as it was not material, the company is now estopped from contending that that statement was untrue, as the knowledge of Breed as to the facts was the knowledge of the company, and, having issued the policy presumptively with such knowledge, it cannot now defend the action upon the ground that the statement made by the insured was untrue. We are of the opinion that this evidence was admissible. It was in relation to a transaction between the insured and the agent of the company prior to the issuance of the policy or certificate of insurance, and clearly shows that no intentional misrepresentation was intended on the part of the insured, and that the fact that there was a mistake in the answer was brought to the attention of the agent before the certificate or policy was issued, such knowledge will be imputed to the defendant company, and hence, having issued its policy or certificate presumptively with the knowledge that was in possession of the agent, it is estopped from interposing any defense to the recovery in this action on the ground that said answer to the question was in fact untrue. The evidence therefore admitted as to the conversation was properly admitted. Breed being authorized to solicit parties to insure in the company, it would be presumed that he would communicate to the company any facts that might come to his knowledge that would increase the risk, and that he in fact did so. This court has held in several cases in accord with the courts of Illinois and many of the other states that a person appointed as agent by the company to solicit insurance, forward applications, and deliver policies is in effect the general agent of the company, and his knowledge of any fact that might increase the risk is the knowledge of the company. Fosmark v. Equitable Fire Co., 120 N. W. 777; Vesey v. Com. Union Co., 18 S. D. 632, 101 N. W. 1074; Harding v. Norwich Union Co., 10 S. D. 64, 71 N. W. 755; Lyon v. Insurance Co., 6 Dak. 67, 50 N. W. 483;

South Bend Toy Co. v. Dakota Fire & Marine Ins. Co., 3 S. D. 205, 52 N. W. 866; Smith v. Mutual Cash Guaranty Co., 21 S. D. 433, 113 N. W. 95. See also, the following cases: Wilson v. Anchor Fire Ins. Co. (Iowa) 122 N. W. 158; Padrnos v. Century Fire Ins. Co., 142 Iowa 109, 119 N. W. 133; Pringle v. Modern Woodmen, 107 N. W. 756; Thornburg v. Farmers' Life Co., 122 Iowa 260, 98 N. W. 107; McArthur v. Home Life Ass'n. 73 Iowa, 336, 35 N. W. 430, 684; Otte v. Hartford Ins. Co., 88 Minn. 423, 93 N. W. 608, 97 Am. St. Rep. 532; Delaney v. Modern Acc. Club, 121 Iowa 528, 97 N. W. 91, 63 L. R. A. 603; De Witt v. Home Forum Benefit Order, 95 Wis. 305, 70 N. W. 476; Supreme Council v. Boyle, 10 Ind. App. 301, 37 N. E. 1105.

In Smith v. Mutual Ins. Co., supra, this court in its opinion says: "These insurance companies, stimulated to intense exertion by competition and profitable results, provide their agents with persuasive literature, and send them out to solicit business clothed with power to do in their behalf all that is necessary with reference to the duty of obtaining and forwarding applications to the home office or to some agent or officer authorized to issue and deliver policies. Persons dealing with such agents appointed by the company presumptively on account of their integrity have the right to rely upon their suggestions as to what is material or what constitutes a satisfactory answer to any question contained in the application, and when, as in this case, such representative is upon the ground and in possession of abundant means of knowing all facts material to the risk, his statements, contained in the application which he assumptively fills out, although they may be erroneous, are binding upon the company after the premium has been paid, the policy issued, and the property destroyed. It is well settled that where the agent fills up a blank application, and volunteers advice as to the character of the answer to be given to any material question contained therein, his act in so doing is the act of the company, and parol testimony is admissible to show the facts."

In Wilson v. Anchor Fire Ins. Co., supra, the insured discovered a mistake in the application, and informed the soliciting agent

of the discovery of other insurance, the soliciting agent at the time having forwarded the policy to the company, and the court says: "Before such application was accepted by the company, and while the application was still in the hands of its soliciting agent, the mistake was discovered by the plaintiff, and such discovery was promptly communicated to the soliciting agent. The plaintiff doubtless had a right at that point to recall his application and terminate negotiations. Surely the appellant had a right to reject the application. It did not do so. With knowledge of the material fact it chose to issue its policy in pursuance of the application, and to collect its premium therefor.  *  *  *  He was the soliciting agent of this company. It is the settled rule in this state that the defendant company was chargeable with this knowledge on the part of its soliciting agent. It was a present condition made known to the agent while the application was in his hands, and before the company had bound itself to its acceptance."

In Vesey v. Com. Union Ins. Co., supra, this court, after a review of the authorities, says: "The view that the knowledge of the agent employed by and acting for the company is the knowledge of the company is not only sustained by authority, as we have seen, but is eminently just and proper. An insurance agent is selected by the company, and may be required to give such security as the company may deem proper for the faithful discharge of his duties.  *  *  *  When the insured has, therefore, acted in good faith, and made a full disclosure to the agent of all the facts relating to the property, and has paid the premium for such insurance, the insured should have the right to recover, even though the agent has failed to communicate to the principal the facts so communicated to him by the insured, unless actual fraud on the part of the insured is shown." While this language is used with reference to fire insurance, it equally applies to life insurance. The views expressed by this court in its earlier cases that the soliciting agent is to be deemed the general agent of the company was by chapter 126, Laws 1905, incorporated into, and made a part of, the insurance law of this state as applicable to fire insurance, as follows: "Any person who solicits insur-

ance or issues policies of insurance, or procures applications therefor, shall be held to be, and considered, the general agent of the insurer issuing the policy or making a renewal thereof, except as to proof of loss and adjustment thereof, and neither the application of the insured nor the by-laws of the company shall be considered as a warranty or a part of the contract of insurance." This act, having been approved March 10, 1905, became a part of the law of this state on the 1st day of July, 1905, some two months or more prior to the date of the policy in controversy in this case, and, though it applies only to fire insurance, the rule should equally apply to life insurance. The authority of an agent and the fact that his knowledge is the knowledge of the company was so fully discussed by this court in the case of Fosmark v. Equitable Fire Ins. Co., supra, and the authorities reviewed, that a further discussion of that question or a further citation of authorities does not seem to be necessary, as the law is settled in this jurisdiction that a soliciting agent is to be deemed the general agent of the company, and, as such, his knowledge becomes the knowledge of, and binding upon, the company. The contention of the appellant, therefore, that the knowledge of the agent or deputy, Breed, was not the knowledge of or binding upon the company, is clearly untenable. When, therefore, the insured sought to have her application corrected, and was informed by the agent that it was not material, and therefore not necessary that it should be corrected, was in effect the knowledge of the company, and the company is now estopped from claiming that the falsity of the statement avoids the policy and relieves the company from its liability thereon. It appears from the application for insurance that the insured was asked the following question: "Have you had any serious illness within seven years?" to which she answered, "No." It is contended by the appellant that this answer was untrue, as it was clearly shown that the insured had had a miscarriage and a serious illness about three years prior to the application for the policy. It is insisted by the respondents in support of the judgment of the court below that this question applied to an illness not included in the question, "Have you had a miscarriage?"

and, excluding the illness resulting from the miscarriage, her answer was strictly true, and therefore that the two questions should be separately considered. In the court's charge to the jury it points out to them clearly the distinction between the two questions. To fully understand the nature of the distinction as presented by the trial court, it will be necessary to quote in this opinion quite fully from the charge of the trial court, and also for the purpose of considering the parts of the charge of the court which have been assigned as error: "The defendant company by way of defense alleges that certain of the answers to questions touching the health and physical condition of the insured were not truthfully answered in the application made by the insured. If those questions were turthfully answered, then these plaintiffs' ought to recover. If they were not truthfully answered, then the plaintiffs ought not to recover. For the purpose of making clear to your minds this proposition, the court may say that there are two branches to this defense, and I separate those matters into two groups so that the jury may understand the rules of law which govern with reference to each of them. In one of these defenses, so to speak, or groups of facts which the defendant pleads as a defense, it is alleged that the insured, Mrs. Thomas, answered a certain specific question contained in this medical examination falsely. It is alleged that that question was in substance whether or not within a certain period of time named in the question—and you will have that question with you—Mrs. Thomas had had a miscarriage. That is one of the questions which is in this medical examination. Now, that particular question, owing to the line of evidence and the facts in this case, requires a separate consideration and a distinct consideration by the jury and by the court from the other questions which are brought in issue by the defendant's answer, and for this reason it is alleged by the plaintiffs' complaint in this case that that question whether or not the insured had suffered a miscarriage within a certain period of time was not truthfully answered in the written medical examination. In other words, the plaintiffs admit that if Mrs. Thomas answered that question 'No,' that that answer was not true. If you should find

that that question was asked her and that she answered it 'No,' then the plaintiffs could not recover in this action, unless it appears that the defendant company is estopped from pleading that particular defense in this case. Now, it is conceded here that this application for insurance was taken by a deputy having authority from the defendant company to take applications of this character, and that that deputy was a duly authorized agent of the defendant company. That question is not in dispute here. It is admitted by both sides. Now, it is alleged further by the plaintiffs in this case, by way of showing an estoppel on the defendant company to plead this defense as to the falsity of that particular answer, that the true facts were communicated to the agent, Mr. Breed, before this contract of insurance was finally consummated. In other words, it is alleged that at the time Mr. Breed was filling up this aplication that it was stated to him by Mrs. Thomas and by other members of the family, I think—however that may be, you will remember that it was communicated to Mr. Breed—that that answer as it stood in that medical examination was untrue, and that, in fact, the applicant, Mrs. Thomas, had had a miscarriage within the period of time named in the question. Now, gentlemen of the jury, the court instructs you as a matter of law with reference to that particular branch of this case that if at the time Mr. Breed took that application he was informed by Mrs. Thomas, or by those then present, with her assent to the statement, that that answer was untrue, and that in fact she had had a miscarriage within that period of time, then that knowledge so communicated to Mr. Breed, their agent, was knowledge communicated to the defendant company itself, because Mr. Breed was their agent, and his knowledge of that fact was the knowledge of the company; and if you should find then that the company, through their agent, knew that fact, that answer was untrue, and thereafter, knowing it, issued this policy of life insurance, then the company is estopped from setting up that defense as to that particular answer, and so far as that particular defense is concerned, the plaintiffs would be entitled to a recovery. ·I make that statement with-

out any reference to the other defenses because I shall refer to those later.* * * It is further alleged by the defense that among the questions asked the said Sarah A. Thomas in said examination was the following: 'Have you had during the last seven years any disease or severe sickness?' and also: 'Have you miscarried and from what cause?' to which questions she answered, 'No,' while in truth and in fact the said Sarah A. Thomas had previously and within seven years suffered a miscarriage, which very nearly resulted in her death. Now, so far as the answer to that question relative to this matter of miscarriage is concerned, it is conceded that that was answered 'No,' and I have instructed you sufficiently with reference to that particular matter under the first head to which I called your attention, and I need not allude to that portion of this question any further. So that the question stands as if it were: 'Have you had during the last seven years any disease or severe sickness?' That, of course, must refer, and does refer, to some disease or sickness other than that involved in the miscarriage, because the question is specifically put in the same connection as to the miscarriage, and I need not call your attention to this miscarriage matter any more fully. The question is: 'Have you had during the last seven years any disease or severe sickness?' She answered that question 'No,' and that is conceded. Is that answer true? If it was true, then you can lay that answer out of this case. If it was not true, then it is a complete defense to a recovery in this case. * * * Did Sarah A. Thomas during the seven years next preceding September 9, 1908, have any disease or severe sickness? Now, this relates to an issue raised by the allegation of the defendant's answer in this case to which I directed your attention. You are instructed that that question does not relate to the question of any sickness occasioned by the miscarriage, but does relate to any sickness other than miscarriage."

We are of the opinion that the trial court was right in ruling that the two questions—one as to the miscarriage and the other as to her serious illness—were distinct and separate questions, and that, therefore, if her answer to the latter question was true, then

the company could not take advantage of that clause in the policy providing for the forfeiture of the same in case any answer of the insured to a material question was untrue by reason of the fact that she had had a serious illness resulting from her miscarriage. Having been interrogated as to the fact of miscarriage and answered that question truthfully, or sought to have it so corrected as to make it a true answer, the second question was properly held not to include the illness resulting from the miscarriage, and hence her answer to that question, if true, excluding the miscarriage and illness resulting therefrom, constituted no defense to the action. It will be observed that the charge is very full and specific and clearly presents to the jury the issues that necessarily arose in the case and the manner in which they should arrive at their conclusion and verdict. Without attempting to discuss the various parts of the charge separately, it must suffice to say that in our opinion the charge of the court was correct, and that the contention of the appellant that the court committed error in the course of its charge is untenable.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.

WHITING, P. J. (dissenting). I am unable to agree with my colleagues that the judgment and order of the trial court should be affirmed. While I am in full accord with much that is said in the foregoing opinion, yet there is one feature of this case which it would seem to me has not been given proper effect by the opinion of the majority of this court.

The application had attached thereto and as a part thereof two sets of questions; one set to be asked of all applicants whether male or female, the other set of questions being those to be asked female applicants only. Among the first set was the question: "Have you had during the last seven years any disease or serious sickness?" There is no claim made but what the applicant knowingly answered this question, and answered the same, "No." It was from the other set of questions, and entirely separate from the above question where was found the question, "Have you miscarried and from what cause?" This question, the proof showed

and the jury found, was not answered by the applicant, but that the medical examiner had inserted in answer thereto the word, "No." When this answer was discovered, the agent was advised of the error thereof, and was advised that applicant had had a miscarriage some five or six years prior to the date of such application. There was no claim that the agent was advised that this miscarriage resulted in any severe sickness, and, upon the trial, no evidence was offered by the respondents in relation to the date of such miscarriage, but the undisputed evidence offered on behalf of the defendant, the same being the testimony of a doctor who had attended the applicant, showed that such miscarriage was three years prior to the date of the application, and that such miscarriage was followed by a very severe illness.

It was the theory of the trial court, as shown by the rulings and instructions, that a false statement in answer to the questions asked the applicant in the medical examination would render the certificate void. It appears that the appellant was informed through its agent that applicant had a miscarriage some five or six years prior to date of application. The application advised the company that the applicant during the prior seven years had had no disease or severe sickness. The undisputed evidence shows that the miscarriage was but three years prior to said date, and was followed by severe illness. The company might well say that it would not hesitate about issuing a policy where the miscarriage was so long ago and was not attended with "disease or severe sickness," while it would refuse a policy to a woman who had miscarried three years prior to date of her application. and whose miscarriage was followed by "very severe illness." Upon the theory of the trial court to the effect that false statements would avoid the policy where the appellant has no notice of the falsity of same, there certainly remained sufficient falsity in the answers to these questions, beyond what the appellant had notice of, to avoid the certificate sued on.

A careful reading of the instructions quoted shows that the trial court took from the jury any consideration of the evidence in relation to miscarriage when determining what answer it should

make to the question: "Did Sarah A. Thomas during the seven, years next preceding September 9, 1908, have any disease or severe sickness?" Undoubtedly it was the theory of the trial court that, owing to there being a separate question relating to miscarriage, the applicant had a right to consider that the question relating to sickness during the past seven years referred to sickness or disease other than such as resulted from or accompanied miscarriage. It must not, however, be overlooked that, according to respondents' contention and the findings of the jury, the applicant did not know that there was any question relating to miscarriage when she answered the other question; and certainly, with the evidence given by the doctor who attended at time of miscarriage, there was ample evidence to warrant the jury in finding the answer to this question to be false, providing the consideration of same had not been taken from it by the instructions of the court. It will also be noted that the question as to miscarriage does not refer to date thereof, or to severity thereof, and the only place where time or severity of sickness is called for is in the question which applicant answered, and the court certainly should have submitted to the jury all the evidence, to be considered by it in answering the question referred to it, concerning disease and sickness during the seven year period.

It might be that the applicant honestly supposed that the question relating to sickness and disease during the seven year period did not call for an answer based upon the fact of miscarriage, and that, therefore, her answer to such question was not intentionally false, and thus bring this case under the rule recently laid down by this court in Erickson v. Ladies of the Maccabees of the World 25 S. D. 1, 126 N. W. 259, but such question was not submitted to the jury by the court.

The judgment of the trial court and order denying a new trial should be reversed.

SMITH, J., taking no part in the decision.