## MARGARET VERA LEPPER v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY AND OTHERS.[1]

December 28, 1928.

No. 27,007.

[1]Reported in 222 N. W. 643.

See note in 47 L.R.A.(N.S.) 81; L. R. A. 1915C, 85; 18 R. C. L. 863;
3 R. C. L. Supp. 866; 6 R. C. L. Supp. 1092.

*Tautges, Wilder & McDonald,* for appellant.
*Howell, Howell & Howell,* for respondents Edward Bliss Lepper,
Homer Lewis Lepper, and Mrs. N. A. Lepper, their guardian.

STONE, J.
Lora Bliss Lepper, while in the employ of defendant as a locomo-
tive fireman and engaged in interstate commerce, was instantly
killed February 6, 1928.   This action is under the federal employers
liability act, 45 USCA, § 51, to recover damages for his death.   It
has been compromised and plaintiff has received in settlement
$16,000.   After payment of attorney's fees and other expenses there
remains for distribution to the beneficiaries only $9,730.53.   The
district court apportioned that sum as follows:   To the widow,
Margaret Vera Lepper, $3,730.53; to Edward Bliss Lepper, a minor
son, $2,000; to Homer Lewis Lepper, a minor son, $2,500; to a
daughter (born September 8, 1928, after the order of distribution
was made) $1,500.   From that order, Margaret Vera Lepper, widow
of the deceased, appeals not only as special administratrix but also
on behalf of herself as widow and for the benefit of her daughter.

The two minor sons at the time of their father's death were of the ages of nine and seven years. They are the children of the deceased by a former marriage. After appellant became his wife, the boys made their home with their paternal grandparents. At the time of his death, Lepper was 34 years old. He was in good health, of good character, industrious, and with the prospects of promotion usual in railroad operation. Appellant, his wife, was 35 years of age and dependent solely upon her husband for support. She is not in good health and has no training for any other occupation than that of housewife. Other material facts will be stated in the course of the opinion.

The contention of appellant is that the allowances for herself and her infant daughter are both too low. It will be observed that her own allowance is somewhat in excess of one-third, which would be the portion going to her if the distribution had been made under our statutes of descent (G. S. 1923, §§ 8718, 8734) or the Minnesota employers liability act (§ 4933). The allowances to the minor sons were made with some regard to the fact that they would have no legal claim upon their father for support or maintenance after attaining their majorities. That explains why the younger was given a larger sum than the older. We have been unable to find in the record or argument any explanation of the manner in which the allowance to the daughter was fixed. It may be explained in part on the assumption that her participation in the benefits of the allowance to the mother was considered and so went in reduction of the portion given her in her own right.

■ The cause of action given by the statute (45 USCA, § 51) is to the personal representative of the deceased but "for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." This act and others similar to it "have been continuously interpreted as providing only for compensation for pecuniary loss or damage." M. C. R. Co. v. Vreeland, 227 U. S. 59, 71, 33 S. Ct. 192, 57 L. ed. 417. In that case it is pointed out also that "the pecuniary loss is not dependent upon

any legal liability of the injured person to the beneficiary. That is not the sole test." In that connection it was said that while compensation does not include damages by way of recompense for grief or wounded feelings, "damages for the loss of services of the husband * * * and, when the beneficiary is a child, for the loss of that care, counsel, training and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation," should not be excluded.

In G. C. & S. F. Ry. Co. v. McGinnis, 228 U. S. 173, 174, 33 S. Ct. 426, 57 L. ed. 785, there was neither allegation nor evidence that a daughter of the deceased "was in any way dependent upon the decedent, nor that she had any reasonable expectation of any pecuniary benefit as a result of a continuation of his life." It was held by the court of civil appeals of Texas [147 S. W. 1188], where the case was first taken for review, that the federal "statute expressly authorizes the suit to be brought * * * for the benefit of the surviving wife and children of the deceased, irrespective of whether they were dependent upon him, or had the right to expect any pecuniary assistance from him." The Supreme Court of the United States had already construed the statute "as intended only to compensate the surviving relatives of such a deceased employee for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given." [228 U. S. 175.] The opinion proceeds to the effect that "the recovery must therefore be limited to compensating those relatives for whose benefit the administrator sues as are shown to have sustained some pecuniary loss." It was therefore held erroneous to permit any recovery for a child who had not been dependent on the parent at the time of his death. See also Taylor v. Taylor, 232 U. S. 363, 34 S. Ct. 350, 58 L. ed. 638; N. & W. Ry. Co. v. Holbrook, 235 U. S. 625, 35 S. Ct. 143, 59 L. ed. 392. For other cases, see 45 USCA, 366.

It being so plain that the purpose of compensation for the actual pecuniary loss of the beneficiaries must control not only its amount but also, where there is more than one beneficiary, the distribution

of a recovery for death under the federal statute, the statutes of descent and distribution of the state where the cause of action arose or where the case was tried can have no application. Their aim is not compensation for damage suffered. Their only purpose is to distribute the estate of persons who have died intestate. Their rules, while designed to accomplish justice, must be and are arbitrary, general and inelastic. In the main they effect a distribution based upon the relationship, by blood or marriage, of the distributees to the decedent, and take no account otherwise of the pecuniary loss they have suffered by his death. The federal employers liability act having fixed no standard of apportionment other than that of money loss, and that in turn depending upon what pecuniary advantage was to be reasonably expected by each beneficiary from the deceased had he lived, each case will present its own problem to be decided on its own facts.

At the time of his death the decedent in this case had an expectancy of life of 32.5 years; that of his widow was then 31.78 years. Her expectancy being the shorter must be taken as the time during which she might and probably would have received support from her husband had he lived. McGarvey's Guardian v. McGarvey's Administrator, 163 Ky. 242, 173 S. W. 765. The three children would have remained legally dependent until their majority, the age of 18 in the case of the daughter and 21 in that of the two sons. In many cases that factor of the period of the legal, as distinguished from the actual, dependency of the beneficiaries upon the decedent had he lived will be the only one that can be weighed with a satisfactory degree of certainty. Logically, therefore, and justly as well, it should have a preponderating if not a determining influence to the extent that other influential factors do not appear at all or manifest themselves so vaguely that they cannot with confidence be given much influence in determining the result. Such a factor may appear plainly and with a determinative effect, as in G. C. & S. F. Ry. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. ed. 426, where the proof of actual dependence demanded by the statute was wholly lacking as to a daughter of the deceased, and in consequence it was

considered error to have allowed any recovery on her account. The point of all this is that each case must be decided on its own facts, and decision will in general be safe only when controlled by factors which appear with sufficient certainty and definition to be ponderable rather than those which remain so far in the realm of conjecture as to defy any appraisal which can be attended by assurance of the justice of the result.

■ With these preliminary observations on the general aspects of the problem, we come to a consideration of the allowance to the widow. It was for over one-third of the whole fund, $3,730.53 out of $9,730.53—substantially more than is assigned to the widow by our statutes of descent. That is pertinent only for the doubtful satisfaction of the analogy offered by the statute and the legislative policy thereby declared.

Mr. Lepper is said to have been earning $230 monthly. Out of that, $150 was turned over to his wife. How much of that went for household expenses does not appear. Mrs. Lepper is not in robust health, is trained for no occupation other than that of housewife, and must support herself. That generally and in brief is the basis of the claim, earnestly asserted on her behalf, that the allowance made for her is inadequate. It may be, but we cannot find in this record any basis of fact upon which to base a confident judgment to that effect. Therefore we cannot interfere. That is because of the rights and dependency of the children, which we consider next.

■ The legal and natural duty of a father to support his children needs no elaboration here. Mr. Lepper recognized it and was not remiss in its performance. True, his two sons by a former marriage were placed with his parents upon the death of their mother and ever since have remained in their custody. The grandparents are advanced in years and said to have little or no property. The two boys have no expectation of inheritance from that source. Furthermore, such assurance of support as the grandparents may offer them cannot take the place of that to which they had a right from their father under the rules of both law and family ties. The probability

is not that his contributions to them would have decreased but rather that they would have been increased to meet the demands of the growing boys and their education. Our conclusion is that they should not be discriminated against in the distribution of the recovery because of what their grandparents have done for them in the past or what possibly they may do for them in the future. What they may get from that source is conjectural at best. It is fairly clear that the widow has done nothing for the boys and that they cannot expect anything from her in the future. There is no claim that she is either disposed or able to contribute to their support.

The general consideration thus invoked—that of the legal right of a child to the care and support of its father—applies with equal force to the infant daughter and her right to share in the fund remaining for distribution. The fact that she will have the care and affection of her mother does not in this case lessen the pecuniary loss she has suffered by reason of the death of a father she can never see or know. Her condition of legal dependency upon him had he lived and the period of its duration are the only factors which appear with sufficient certainty to have controlling influence upon the result. In short, we consider that the three children should be put upon the same basis and that their portion of the fund should be distributed in proportion to the periods during which each of them could have expected the support of their father had he lived. In the case of Edward Bliss Lepper, the eldest boy, there were 12 years remaining after his father's death before he reached his majority. In the case of Homer Lewis Lepper, the younger boy, that period would be 14 years. (If these figures are not correct, the correct ones will control.) In the case of the infant daughter of course it would be 18 years. The fund remaining for distribution after the allowance to the widow should be divided among the three children on that basis. We do not make the computation but leave it to counsel or the court below if it cannot be agreed upon.

While, as said in M. C. R. Co. v. Vreeland, 227 U. S. 59, 70, 33 S. Ct. 192, 57 L. ed. 417, the pecuniary loss of a beneficiary "is not dependent upon any legal liability of the injured person    *    *    *.

That is not the sole test," it may well be that a given case, and to us the instant one appears to be such a case, will offer no other basis for confident apportionment. If in this case the two sons of the decedent were reasonably sure of adequate support from their paternal grandparents during their minorities, a larger portion of the fund might well be awarded to the widow and daughter. Or if the widow had an income of her own adequate to her needs, from her possession and use of which the daughter also would be assured of abundant support, a much larger share might well be apportioned to the sons. While we appreciate the influence which such special circumstances may have wherever they appear, their absence from this case prevents decision upon any other factors than those already specially considered and which lead to the result indicated.

■ In passing we desire to observe that where in matters of this kind there is an issue of fact which is tried and determined in the district court, G. S. 1923, § 9311, requiring that the decision shall be in writing and that the facts found and the conclusions of law shall be separately stated, should be observed. This appeal has brought us no issue of fact, but subsequent cases of the same sort may present distinct and difficult issues of fact which should be determined in the district court with a decision complying with the statute. Hawkins v. Foasberg, 175 Minn. 252, 220 N. W. 951.

The order appealed from is affirmed on the appeal of Margaret Vera Lepper on her own behalf, and reversed on her appeal on behalf of her infant daughter and the case is remanded for further proceedings which will lead to a distribution of the fund on the basis of the views expressed in this opinion.

So ordered.