## DEMEREL E. SMITH v. BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES.[1]

October 21, 1932.

No. 29,103.

[1]Reported in 244 N. W. 817.

*Merriam & Wright,* for appellant.
*Carl O. Wegner, James O. Caulfield,* and *P. A. Wells,* for respondent.

DIBELL, J.

Action to recover upon an accident and illness income policy of insurance issued by the defendant to the plaintiff. There was judgment for the plaintiff. Defendant appeals.

■ When the insured truthfully states the facts relative to his condition of health and the presence or absence of disease and as to the attendance of a physician, and the general manager of the insurer, soliciting the insurance, writes his answers incorrectly in the application, and the insured is without knowledge that the answers are incorrectly written and is not at fault in not knowing, he may recover upon the policy notwithstanding the statements written are untrue, the general manager in such case being the agent of the insurer in putting down the answers. Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 236 N. W. 207. In an early case, to which many of the others refer, Kausal v. Minnesota F. Mut. F. Ins. Assn. 31 Minn. 17, 20, 16 N. W. 430, 47 Am. R. 776, Mr. Justice Mitchell said:

"On principle, as well as for considerations of public policy, agents of insurance companies, authorized to procure applications for insurance, and to forward them to the companies for acceptance, must be deemed the agents of the insurers and not of the insured in all that they do in preparing the application, or in any representations they may make to the insured as to the character or effect of the statements therein contained. This rule is rendered necessary by the manner in which business is now usually done by the insurers. They supply these agents with printed blanks, stimulate them by the promise of liberal commissions, and then send them abroad in the community to solicit insurance. The companies employ them for that purpose, and the public regard them as the

agents of the companies in the matter of preparing and filling up the applications,—a fact which the companies perfectly understand."

This case has been followed and represents the law as long applied by us. Otte v. Hartford L. Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532; Finn v. Modern Brotherhood, 118 Minn. 307, 136 N. W. 850; Mahoney v. Minnesota F. Mut. Ins. Co. 136 Minn. 34, 161 N. W. 217; Zimmerman v. Bankers Cas. Co. 138 Minn. 442, 165 N. W. 271; Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 208 N. W. 410; Schmitt v. U. S. F. & G. Co. 169 Minn. 106, 210 N. W. 846.

■ The defendant is an insurance company organized under the laws of Illinois. It is not a fraternal organization. On January 8, 1929, the plaintiff, then slightly under 19 years of age, signed an application for a policy of accident and illness insurance. He was an usher or "red cap" in the Great Northern depot at Minneapolis. His application was written by the state manager of the defendant, who was the highest officer of the defendant in the state and who solicited the insurance. The application referred among other things to the condition of plaintiff's health and whether he was suffering from disease or had had medical attention during the preceding year. His testimony is that he told the general manager truthfully that he was afflicted with a disease and that he was under the care of a physician. The agent wrote his answers in lead pencil. He did not correctly insert the answers of the plaintiff as to his health and as to the attendance of a physician.

The plaintiff says that when he told him that he had a disease and that he was under the treatment of a physician "he just gestured like that; he says, 'Oh, well, that is all right. I will fix that up.' "

And again the manager said: "Oh, well, I will fix that up. Don't pay any attention to that."

The manager did not read the application to the plaintiff, nor did the plaintiff read it. The plaintiff says:

Q. "After he had said that did he read the application to you?
A. "No, sir.

Q. "Did he allow you to read the application?

A. "No, sir.

Q. "Did you try to read the application?

A. "I usually read anything that I sign, and I started reading it; he says, 'There is nothing there to bother with, just sign here,' which I did.

Q. "And he took the application and had you sign it?

A. "Yes, sir.

Q. "Without reading it to you?

A. "Yes, sir.

Q. "Or without his reading it to you?

A. "Yes, sir.

Q. "Then what became of the application?

A. "He folded it up and put it in his pocket or portfolio."

The plaintiff's testimony was corroborated by that of another "red cap." The state manager denied it. He based his denial upon his invariable custom. He hardly had a definite recollection of what took place at the time. He was taking several hundred applications a year.

The evidence justifies the finding which the court made that the plaintiff testified truly and that his answers were incorrectly put down by the state manager and that the plaintiff was not at fault. The evidence was enough to bring the case within those cited in the preceding paragraph.

■ The policy provided indemnity of $40 a month in a case like this:

"For illness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for fifteen days from its date, then for the period of total loss of time, not exceeding twelve (12) consecutive months, during which 'such illness' shall wholly and continuously disable and prevent the Insured from performing any and every kind of work or occupation for wages or profit."

The evidence of the physician for the plaintiff is that he commenced treating him in July, 1928, treated him for perhaps two

months, and then he ceased coming to him. He saw him next in March, 1929. He had recovered from his former trouble but was suffering from something the exact nature of which was not determined. The boy was reluctant to go to the hospital. The physician treated him without much result. He was taken definitely ill on October 18, 1929, and went to the hospital. It was there found that he had bilateral tuberculosis of the kidneys. This trouble was not connected with his trouble of 1928. Under the policy, indemnity is given if the illness is "contracted and begins during the life of this policy and after it has been maintained in continuous force for fifteen days from its date."

It seems unquestioned that the finding should be that the germs of the tuberculosis were in the boy's body before the 15-day period commenced. They had not manifested themselves. They did not disable him from work. The policy did not intend to offer insurance which would not give compensation if the germs of the disease were in the insured's body prior to the 15 days after the date of the insurance, but not manifest and perhaps not discoverable. A construction of the policy unfavorable to the defendant must be given. It was intended that the 15-day period should refer to a time when the disease manifested itself. And taking this view, a finding that the disease did not commence within the 15 days after the issuance of the policy is sustained. This gives the plaintiff a right to insurance at $40 per month from the time of his disability.

■ The policy provided that there should be compensation at $80 per month for two months in the following case:

"If within ninety days from the date of any accident or the beginning of any illness covered by this policy, and solely on account thereof, the Insured shall be under treatment and also be resident in a duly licensed hospital, * * * for the period of his continuous treatment * * *, not exceeding two months, * * *."

What is said in the preceding paragraph applies but perhaps less forcefully. The words "beginning of any illness covered by this policy" refer to an illness which definitely manifests itself, and not to the mere presence of disease germs in the body. The trial court

finds in effect that the disease commenced October 18, 1929. The plaintiff was disabled from then on and resident in a duly licensed hospital for continuous treatment for two months. This brings the case within the 90-day period and entitles the insured to compensation for two months at $80 per month. For two months of his illness and within 90 days of its beginning, he was in the hospital receiving continuous treatment, and should have the additional $40 per month.

■ In its original finding the court did not definitely fix the date when the disease commenced or definitely find that the plaintiff went to the hospital within 90 days. The approved practice is to make a specific finding. In some cases it may be error not to do so. G. S. 1923 (2 Mason, 1927) § 9311; Morrissey v. Morrissey, 172 Minn. 72, 214 N. W. 783; Hawkins v. Foasberg, 175 Minn. 252, 220 N. W. 951; Lepper v. C. B. & Q. R. Co. 176 Minn. 130, 222 N. W. 643; Caulfield v. C. W. Jewett Co. Inc. 183 Minn. 503, 237 N. W. 190; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9873.

■ But where a motion for an amended finding affirmatively or negatively upon such issue is made, a denial of it is the equivalent of a finding contrary to that requested. Malchow v. Malchow, 143 Minn. 53, 172 N. W. 915; Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293; National Surety Co. v. Wittich, 186 Minn. 93, 242 N. W. 545; Sheffield v. Clifford, 186 Minn. 300, 243 N. W. 129; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9852. The defendant, making the motion for a finding and meeting a denial, cannot say that the court did not pass upon the fact.

■ One of the standard provisions of the policy was this:

"Upon the payment of claim hereunder any premium then due and unpaid or covered by any note or written order may be deducted therefrom."

The defendant claims that unpaid premiums for 12 months should be deducted from a recovery. Such a claim was not made at the trial; and if otherwise the provision was effective to that end, it does not now avail the defendant.

By G. S. 1923 (1 Mason, 1927) § 3396, it is provided that the statements of the insured, unless wilfully false or intentionally misleading, are valid and binding upon the company when the policy is issued without previous medical examination, or, in case of a minor, without the consent of the parent, guardian, or other person having his legal custody. There was no medical examination, and the plaintiff was a minor. As to the provision relative to medical examination see McAlpine v. Fidelity & Casualty Co. 134 Minn. 192, 158 N. W. 967. There is probably nothing to sustain a finding that the plaintiff wilfully or falsely or intentionally made misleading statements. But we do not stop to discuss the question, for what is said in paragraph one determines the right of recovery if the plaintiff is otherwise within the terms of the policy.

Judgment affirmed.

[1]Reported in 244 N. W. 810.