WILLIAM J. MARSO v. MATT J. GRAIF.[1]

July 23, 1948.

No. 34,582.

[1]Reported in 33 N. W. (2d) 717.

*Frank P. Heil* and *C. A. (Gus) Johnson,* for appellant.

*William Stradtmann* and *Gallagher, Farrish & Sheran,* for respondent.

LORING, CHIEF JUSTICE.

This was a suit for an adjudication that a partnership be dissolved and for a receiver and an accounting. The trial court held that the partnership had been dissolved by agreement on December 31, 1946, and that plaintiff was entitled to recover the reasonable value of his one-third interest in the firm's assets as of that date. This is an appeal from an order denying plaintiff's motion for a new trial.

Defendant, Matt J. Graif, under his name, operated a men's haberdashery or ready-to-wear shop in Mankato. In 1924 he and plaintiff became partners. The business was continued under the name of "Matt J. Graif," with plaintiff owning a quarter of the business and defendant three-quarters. Profits were shared on that basis. Later, plaintiff became a one-third partner and defendant Graif two-thirds, and they shared profits accordingly.

The trial court found that in May 1946 plaintiff informed defendant that he had decided to withdraw from the partnership at the expiration of the lease on the firm's place of business, December 31, 1946; that plaintiff desired to sell his interest; that defendant accepted the offer to sell and agreed to buy plaintiff's interest at the

end of 1946; that plaintiff told defendant that he did not desire to enter into a new lease on the firm's place of business; that defendant should renew the lease in his own name, as an individual, which was done; and that on December 31, 1946, plaintiff left the business, and thereafter it was conducted by defendant. Plaintiff took no part in it. Three weeks later the parties disagreed about the value of plaintiff's interest in the business.

The court found that the partnership had been dissolved December 31, 1946, and that prior to that time an inventory had been taken and a complete accounting and audit made between the partners as of that date, as in previous years. It found that the partnership assets consisted of the furnishings and fixtures, plus the current assets and prepaid insurance. Good will was excluded. The court specifically found that the new lease was not a partnership asset.

Liberally construing plaintiff's assignments, they predicate error as to certain of the court's findings on the ground that they are not reasonably supported by the evidence, and that, since no price was stated at which defendant was purchasing plaintiff's interest in the business, the minds of the partners did not meet in a complete contract; that the partnership still continues; and that plaintiff is entitled to an accounting. There was a motion for amended findings, but, since the order denying it is not appealable, we review only the order denying a new trial. We have often so held, and it would simplify procedure here and save much printing if counsel, in drafting their alternative motions, would draft the motion for new trial with the same care and particularity they would employ if moving on that ground alone. It would then be unnecessary to print in the record the usually long motion for amended findings. There would be no confusion as to just what questions were presented by the motion. The statute authorizing an alternative motion for judgment notwithstanding the verdict or a new trial does not in terms authorize an alternative motion for amended findings or a new trial, although there is no objection to that method of presenting motions in the alternative if each of the motions is made complete in itself.

1. The evidence reasonably supports the findings of the trial court that the partnership was dissolved by agreement as of December 31, 1946. Plaintiff himself testified to their conversation, which took place around May 1946, as follows:

"A. * * * So we started talking. I says to Matt, well, Matt, I am sort of disgusted and things are getting on my nerves around here, I says, I would just as soon get out. I says, you want Johnny in here anyway—that's his son John—and I says, if I put my boys in here that would be a lot of trouble, I says, it wouldn't work out. He said, no, I know it wouldn't, that always causes trouble, he said. So the thing went on.

"Q. Did you say anything to him about selling the business?

"A. Yes, then I told him I would just as soon get out. I says to Matt, will you buy me out? Matt says to me, yes, he says, I'll buy you out.

"Q. Was anything said there about under what circumstances or upon what basis he would buy you out?

"A. No, there was no deal made on that. So I told Matt, I says, I'll tell you, as long as I'm going to be leaving at the end of the year you might as well take out the lease in your own name, I will be out then the first of the year. That was the agreement we had, that's about all. From then on I never heard one word about the lease."

The quoted evidence clearly manifests intent by the parties to terminate the partnership as of December 31, 1946, when the lease expired.

The evidence tends to prove that the parties hereto were doing business as a partnership with their proportionate shares therein definite and certain; that they agreed to dissolve the partnership as of December 31, 1946; that defendant would buy plaintiff's interest, although the actual price was not fixed in dollars; that plaintiff voluntarily left the business on the date so fixed in reliance upon the agreement between them; and that defendant took over exclusive control of the business on the date fixed. Such being the case, although the actual price was not fixed, the law will imply that the agreement was to pay the reasonable value of the share in the busi-

ness so sold. In United States v. Swift & Co. 270 U. S. 124, 140, 141, 46 S. Ct. 308, 314, 70 L. ed. 497, 513, a case where "It was evidently impossible to make a contract fixing the price of the bacon in advance of the partial performance of it, and the price was therefore left to subsequent adjustment," the court said:

"* * * Under ordinary conditions, a valid agreement can be made for purchase and sale without the fixing of a specific price. In such a case a reasonable price is presumed to have been intended."

United States v. Berdan Fire-Arms Mfg. Co. 156 U. S. 552, 15 S. Ct. 420, 39 L. ed. 530; United States v. Palmer, 128 U. S. 262, 9 S. Ct. 104, 32 L. ed. 442; 1 Williston, Contracts (Rev. ed.) § 41.

In arriving at the amount of plaintiff's interest, the court considered the fixtures, the furnishings, the current assets, and the prepaid insurance, but it did not arrive at their reasonable value as of December 31, 1946.

Plaintiff contends that the new lease was an asset to be considered in arriving at the reasonable value of the business. The testimony shows that the parties discussed the new lease. Plaintiff stated that the premises would probably be at a higher rental and that defendant should take the new lease in his own name, which he did. Clearly, defendant had the risk and liability under the new lease. The new lease was not to take effect until the partnership was dissolved. The date which the parties fixed for the ending of the partnership is not to be considered as a coincidence. They stated in May 1946, according to plaintiff, that the present lease would be up December 31, 1946. On the basis of this and the quoted conversations, the parties manifested an intent that the partnership was to terminate when the lease expired and that the new lease was to be defendant's property. The evidence justifies a finding that their minds met as to that.

2. Plaintiff contends that good will is a factor that should be considered in determining the reasonable value of the business. Good will is intangible, and whether it exists depends on the facts in each particular case. Good will was never carried as an asset on the books of the company. The parties had no exclusive agencies for

particular articles, such as the exclusive right to sell a certain brand of shirt or tie. They were free to go into competition with each other the next day after they dissolved the partnership. It was contemplated that defendant would continue the business under his own name, as he had operated it before the partnership. There is no contention that he did not have a right to do so. Plaintiff could have started a business under his own name anywhere. So, on the basis of these facts and in view of the manner in which the dissolution took place, the trial court was justified in concluding that good will was not an element which was to be considered in evaluating the reasonable value of the business. Its denial of plaintiff's motion for a finding that good will be included in the partnership assets was equivalent to a finding to the contrary. Smith v. Benefit Assn. of Railway Employees, 187 Minn. 202, 244 N. W. 817. However, even though defendant was to have the new lease and the location and, along with it, the risk and liability, the fact remains that when the parties had their conversation they must have realized and considered that one was selling and the other was buying a share in a going business. A going business has a value in excess of the physical assets, and that fact must be considered in determining what the reasonable value of plaintiff's interest was as of December 31, 1946. Galveston Elec. Co. v. City of Galveston, 258 U. S. 388, 42 S. Ct. 351, 66 L. ed. 678; Des Moines Gas Co. v. City of Des Moines, 238 U. S. 153, 35 S. Ct. 811, 59 L. ed. 1244; Willcox v. Consolidated Gas Co. 212 U. S. 19, 29 S. Ct. 192, 53 L. ed. 382, 48 L.R.A. (N.S.) 1134, 15 Ann. Cas. 1034; Los Angeles Gas & Elec. Corp. v. Railroad Comm. 289 U. S. 287, 53 S. Ct. 637, 77 L. ed. 1180; Pacific Tel. & Tel. Co. v. Whitcomb (D. C.) 12 F. (2d) 279. In State ex rel. Capital City Water Co. v. Public Service Comm. 298 Mo. 524, 549, 252 S. W. 446, 452, the court said:

"* * * By 'going value' we understand to be meant the value, *distinct from the good-will* which inheres in a plant where its business is established as distinguished from one which has yet to establish its business. Des Moines Gas Co. v. Des Moines, 238 U. S. 153, l. c. 165, 35 S. Ct. 811, 59 L. ed. 1244. Or, as said in Knoxville v.

546

Knoxville Water Co., 212 U. S. 1, l. c. 9, 29 S. Ct. 150, 53 L. ed. 371, it is 'an expression of the added value of the plant as a whole over the sum of the values of its component parts, which is attached to it because it is in active and successful operation and earning a revenue.' " (Italics supplied.)

The parties having agreed on a sale at the reasonable value of plaintiff's interest as of December 31, 1946, it was for the trial court to find that reasonable value, by reference or otherwise, and there should be included with the elements of value, already designated by the court, the additional element of "going business" value.

The case will be remanded for further proceedings in accordance with the views herein expressed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE KNUTSON, not having been a member of this court at the time of the argument, took no part in the consideration or decision of this case.

