## MARY BRATLEY v. BROTHERHOOD OF AMERICAN YEOMEN.[1]

April 4, 1924.

No. 23,780.

**Limitation of action on insurance contract.**

1. Parties to an insurance contract may, in a reasonable way, limit the time in which an action may be brought thereon.

**Uncertain provisions construed against the insurer.**

2. When such limitation is not in harmony with other provisions, the uncertainties are to be construed most strongly against the insurer.

**When limitation begins to run after arbitration is had or fails.**

3. When such provisions relate to arbitration which is put under control of defendant and the time to be consumed is unknown, the limited period in which action may be brought does not begin to run until the arbitration is had or until the arbitration shall fail to settle the matter.

**May be started by exercising such right.**

4. Period of limitation may be started by exercising right of arbitration.

**Waiver of such right by disclaimer of liability.**

5. Disclaiming liability is a waiver of the right to arbitrate.

**Special findings of jury.**

6. Record examined and found to sustain special findings of jury.

**Knowledge of agent of fraternal order who accepts forbidden application.**

7. The agent of a fraternal insurance company does not become interested adversely so that his knowledge is not the knowledge of the company where he accepts an application for insurance contrary to the by-laws and which constitutes a cause for the removal of the agent and a liability on his bond.

[1] Reported in 198 N. W. 128.

**Insured not penalized for disobedience of insurer's agent.**

8. The insurance company selects its own agent, and, if he wavers in his fidelity, the insured and his beneficiary, who are free from fault, should not be required to suffer the penalty.

**Plaintiff not party to any fraud.**

9. Record examined and *held* that plaintiff is not charged with notice of fraud, and has not been a party to any fraud.

**General verdict and special.**

10. General and special verdict *held* to be consistent.

**Refusal to strike out testimony.**

11. Record examined and found not to contain error in reference to the court's refusal to strike out testimony.

**District deputy without authority to make contracts of insurance.**

12. Characteristics of agency of a district deputy representing a fraternal insurance company considered and his duties and authority *held* to be in the nature of a soliciting agent and that he is without authority to make insurance contracts.

**Deputies must comply with by-laws.**

13. By-laws of such fraternal insurance company require that all contracts of insurance must be in writing and signed by certain officers, and district deputies are not endowed with any authority which will permit them to depart from by-laws.

**Cannot waive requirements of by-laws.**

14. A district deputy cannot waive the provisions in the by-laws nor can he waive the falsehood in the application.

**Brotherhood not bound by agent's knowledge of false statement of insured.**

15. The knowledge of such agent to the effect that an insured made false statement in application for membership is not controlling; such fraternal insurance company is not bound by such knowledge of such agent.

**Insured making false statement cannot recover.**

16. Where the insured knowingly makes false statements in such application, without being induced thereto by the agent, he cannot recover even though the agent participates therein.

**When agent has unlimited authority.**
17. If an agent has unlimited authority he may make a contract regardless of false statements.

**Policy avoided by false statements in application.**
18. Where the insured knowingly makes false statements in his application and the application is to be forwarded to the insurer as the basis of the contract, such untruthful statements render the application invalid and avoid the policy.

**Policy void as matter of law.**
19. Where the applicant knowingly makes such false statements and agrees that untrue answers to any question shall render the certificate issued thereon void, it destroys the policy as a matter of law.

**Statute does not apply to fraternal orders.**
20. Section 3300, G. S. 1913, does not apply to fraternal associations.

**When known false statements of insurer avoid the contract.**
21. Where the applicant knowingly makes such false statements, it destroys the contract of insurance whether the agent had knowledge of the falsity or was in collusion with the insured.

Action in the district court for Clay county to recover $2,000 on defendant's certificate of insurance. The case was tried before Nye, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,700.68 and the special findings specified in the fourth paragraph of the opinion. From the judgment entered pursuant to the verdict, defendant appealed. Reversed.

*Leonard Eriksson* and *H. W. Pitkin,* for appellant.
*N. I. Johnson* and *F. H. Peterson,* for respondent.

WILSON, C. J.

Appeal from judgment. Plaintiff sued to recover on a benefit certificate issued by defendant, a fraternal society, on March 4, 1918, and delivered on March 7, 1918, to the insured who was the

husband of plaintiff. Plaintiff is named as beneficiary. The insured died May 31, 1920. Suit was started September 20, 1921.

The defense was that the action was barred by the contractual limitation stated in the policy; no arbitration; that death resulted from a disease existing at and prior to the date of the certificate; false and untruthful answers in the application blank amounting to warranties.

The amended reply says that defendant knew, when it issued the certificate, that the insured had had spitting of blood, and that he had consulted a physician with reference to that trouble and had been informed, in substance, that there was nothing the matter with him.

The jury returned a general verdict for the plaintiff. The jury also made special findings as follows:

1. "Q. Was the answer made by Mr. Bratley in his application for insurance to the effect that he had not previously had spitting of blood, a true statement? A. No.

2. "Q. Was the answer made by Mr. Bratley in his application for insurance to the effect that he had not previously had consumption true? A. Yes.

3. "Q. Was the answer made by Mr. Bratley in his application for insurance to the effect that he had not previously had pleurisy, true? A. Yes.

4. "Q. Was the answer made by Mr. Bratley in his application for insurance to the effect that he was then in good health, true? A. Yes.

5. "Q. Was the answer made by Mr. Bratley in his application for insurance to the effect that he had not previously consulted a physician, true? A. No.

6. "Q. Did Mrs. Riebhoff inform Nels Pehrson previous to the application of Mr. Bratley for insurance that Mr. Bratley had recently spat blood and had consulted a physician regarding the same, or words to that effect? A. Yes.

7. "Q. Did Mrs. Riebhoff inform Nels Pehrson previous to Mr. Bratley's application for insurance that several years prior thereto

Mr. Bratley had spat blood and had consulted a physician regarding the same, or words to that effect? A. No.

8. "Q. Was Mr. Bratley's application accepted by defendant lodge after information had been given to Nels Pehrson by Mrs. Riebhoff that Mr. Bratley had recently spat blood and had consulted a physician in reference thereto or words to that effect? A. Yes.

9. "Q. Was Mr. Bratley suffering from the disease known as tuberculosis at the time he made application for insurance in defendant lodge? A. No."

The contract contains this language:

"No action can or shall be maintained on this certificate unless brought within one year from the date of death or disability of said member and not at all unless the board of arbitration of three members, one appointed by the board of directors, one appointed by the members of the homestead, and one appointed by these two, shall fail to settle the same." ·

Defendant seeks to brush aside the provision for arbitration as surplusage and has in no way sought to exercise the opportunity of arbitration. Defendant on November 8, 1920, denied liability. Unless the clause for arbitration is an element worthy of consideration, this action would be barred because not begun within one year from date of death. It cannot be successfully claimed that the parties to such a contract may not reasonably limit, by contract, the time in which an action may be brought. 26 C. J. § 670, p. 476; Kulberg v. Fraternal Council, 135 Minn. 150, 160 N. W. 685; Dechter v. National Council, 130 Minn. 329, 153 N. W. 742, Ann. Cas. 1917C, 142. The fact that the provision in this contract limiting the time to sue and the provision for arbitration are not in harmony invokes the rule that uncertainties in contracts of this character are to be construed most strongly against the insurer.

In this case the matter of arbitration is apparently exclusively under the control of the defendant. 24 Harvard L. R. 676. The plaintiff is not given any voice in the matter. The time to be consumed in arbitration is unknown, uncertain and insofar as plaintiff is concerned, is uncontrollable. The defendant may indefinitely

delay or postpone those proceedings so as to consume more than the one year in which an action may be brought. Under such conditions the only just construction to put upon such a provision is to the effect that we should deduct the time occupied by the defendant under the reserved right for arbitration purposes before the limited period of one year shall begin to run. In other words, the language limiting the time to one year, in which an action may be brought, must be deemed modified by the other inconsistent clause reserving the right to postpone the time when the action may be brought until the arbitration "shall fail to settle the same." Upon the construction we adopt, the action is not barred. 26 C. J. § 671, p. 476, Stewart v. National Council, 125 Minn. 512, 147 N. W. 651; Dechter v. National Council, supra. If defendant wished the time to be running, it could easily have exercised its rights of arbitration. This it did not do. It did disclaim liability which amounts to a waiver of the rights of arbitration, Cash v. Concordia Fire Ins. Co. 111 Minn. 162, 126 N. W. 524 (26 C. J. § 574) and we see no reason why the time would not run from that date. This action was seasonably begun within one year from that date, and it is not barred by limitation.

Defendant insists that the insured died from disease or disability existing prior to the date of the benefit certificate. The findings of the jury determine this suggestion against the defendant and there is evidence to support the findings. No useful purpose can be served by discussing the evidence in detail.

We are not in harmony with the views of defendant to the effect that, because the by-laws provide that "a deputy who knowingly writes an application of impaired health  *  *  *   or of habits tending to increase the risk  *  *  *   such act or acts shall be good cause for removal and shall create a liability on his bond", the agent under the facts in this case becomes interested adversely to defendant, and, therefore, notice to such agent is not notice to defendant. The defendant selects the agent and if he wavers in his fidelity in this respect, neither an insured nor his beneficiary, who are free from fault, should be required to suffer the penalty that defendant's position would cast upon him. These personal

elements are not sufficient to warrant the conclusion that the agent's interests are, in fact, adverse to the defendant.

The record does not justify defendant's assertion that plaintiff is charged with notice of fraud nor that she has been a party to any fraud.

The general verdict and the special findings are consistent, and are consistent with the law as given in the charge of the court to the jury.

We have considered the assignment of error based upon the court's refusal to strike out the testimony of the plaintiff on the subject of conversations as incompetent under the statute, and, while the record discloses such motion and its denial, the record does not show any such testimony to which such motion was directed.

It is the claim of the defendant that, when the jury answered interrogatories, one in the negative and eight in the affirmative, it was, then, as a matter of law, entitled to a directed verdict. This suggestion has received serious consideration and we have concluded that it is meritorious. It has been established by these special findings that the insured made false statements. They were of such character, being false, it necessarily follows that the insured knew them to be false.

It is claimed by plaintiff that defendant's district deputy knew of these false statements, and the jury has so decided, and that defendant is charged with this knowledge and with such knowledge made the contract and cannot now, after accepting premiums, making delivery of the certificate, and making the contract with full knowledge, complain. This statement seems plausible and reasonable, but it calls for some analysis. If the district deputy was personally making a contract involving such elements, and had this knowledge, he certainly could not be heard to later defend because of the false statements. We must then look to the characteristics of the agency of the district deputy to ascertain if his agency carries with it the power to make insurance contracts in behalf of his principal. Defendant is a fraternal organization duly incorporated. Its affairs are managed by a board of directors who are subordinate

to the governing body known as the supreme conclave. The head officer is the grand foreman. It has a chief medical director. The by-laws specify who are eligible to membership.

The chief medical director shall pass upon the physical qualifications of applicants, and his action shall be final and no certificate shall be issued in any greater amount than such chief medical director recommends. He appoints and has supervision over local examiners with power to issue commissions to them and to revoke the same at his pleasure.

The grand foreman has such authority to appoint and remove district deputies as the board of directors may confer upon him, and to prescribe rules for their government. The organization has state, district, assistant, local and special deputies. Primarily the duties of a deputy are to solicit members and organize in new territories. He institutes local lodges organized by him and gives them ritualistic and floor work and instructs them as to keeping records. He installs and instructs officers. A district deputy receives reports from the lodges in his district.

Application for membership shall be made on forms prescribed by the chief medical director. Members must be elected by ballot. "If elected he shall be examined by the examiner who shall forward the application to the chief medical director, together with his recommendation. If approved by the chief medical director, he shall forward it to the chief correspondent who shall forthwith issue a benefit certificate, which shall be signed by the grand foreman and the chief correspondent, for such an amount as the chief medical director shall authorize." The by-laws further provide:

"The liability of this Association for the payment of benefits upon its certificates, or the social or other privileges of membership, shall not begin until all the acts, qualifications and requirements prescribed for the applicant in these By-Laws shall have been fully complied with by him, nor until all acts required of the local examiner and the Homestead officers shall have been fully complied with, nor until his application shall have been approved by the Chief Medical Director and a benefit certificate issued thereon and delivered to applicant while in good health. A strict compliance

with each and all of the details above referred to shall be a condition precedent to the validity of each and every benefit certificate issued by this association.

"No officer of this association or any person or persons whomsoever is authorized or permitted to waive any of the provisions of these By-Laws, and such officers and persons are hereby prohibited from waiving any provision of these By-Laws."

These provisions provide the exclusive method for membership. The most important powers are vested in the medical director and his local examiner. It is plain that the defendant has never clothed a district deputy with authority to make contracts at his pleasure. Its rights in this respect are much better protected in the hands of the chief medical director. The application blank has three divisions. Part I covers name, age, occupation, beneficiary, other insurance and recommendation of deputy. The filling in of this blank is included in the duties of the deputy. Part II covers warranties of applicant and relates to his health. This is filled in under direction of the medical examiner. Part III covers confidential report of medical examiner. In the instant case the false representations were made to the examining physician. The jury says the deputy had knowledge that the statements were false. It is not claimed that the examining physician or his superior had any information that the two answers were false.

The record forces us to the conclusion that the district deputy is an agent whose principal duty is to solicit and receive applications for membership which are to be turned over to other officials who will decide whether or not the corporation will make a contract of insurance with the applicant. Certificates are issued only to members. There can be no members until they are approved by the chief medical director. No contracts of insurance are authorized except in writing and signed by certain officers. The provisions against waiver are very broad, but should well apply to a district deputy. Such deputies are not endowed with any general authority which would permit them to depart from the by-laws. We think an agent of a corporation, which has its contractual power

so wisely restricted as disclosed by the by-laws of the defendant, has no power to make insurance contracts for his principal; and, if not, we conclude that he cannot effectually waive the falsehood in this application. The deputy being unauthorized to make the contract imputed to him in this transaction, his knowledge is of minor importance under the facts in this case. The agent here has much the same standing as the agent in Louden v. Modern Brotherhood of America, 107 Minn. 12, 119 N. W. 425.

This is not a case where the insured was led by the agent into making false statements. Where the insured knowingly makes false statements, he cannot recover even though the agent participates therein. 25 Cyc. 803. If the agent has unlimited authority and may make such a contract regardless of false statements, then, of course, the vice is eliminated because the parties ignore it and make a contract of their own choosing.

Recognizing the type of the agency of the deputy, his knowledge of the false statements would not prevent the insurer taking advantage of such statement. Haapa v. Met. Life Ins. Co. 150 Mich. 467, 114 N. W. 380, 121 Am. Rep. 627, 16 L. R. A. (N. S.) 1165; 14 R. C. L. Insurance § 340; Hanf. v. N. W. Masonic Aid Assn. 76 Wis. 450, 45 N. W. 315. It is urged that, as the deputy knew of the falsity, his knowledge was the knowledge of the company, and, having issued the policy, the company is bound. We cannot hold that insurer is bound by statements contained in an application when not only the agent, but the assured, knows they are untrue, and the application is to be forwarded to the insurer as the basis of the contract. To do so would put the association completely at the mercy of dishonest and unscrupulous agents. Mudge v. Supreme Court I. O. O. F. 149 Mich. 467, 112 N. W. 1130, 14 L. R. A. (N. S.) 279, 119 Am. St. 686; Butler v. Mich. Mut. Life Ins. Co. 184 N. Y. 337, 77 N. E. 398.

In fact this court has held that if the insured knew that untruthful statements were contained in the application, the fact would render the application invalid and avoid the policy. Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330. This would be true though the insurer's agent wrote the false statements into the

application. Zimmerman v. Bankers Casualty Co. 138 Minn. 442, 165 N. W. 271. It is fair to construe this language as meaning if the agent knew the statements were false. Here the agent did know of the falsity, but he did not write the false answer which was written by the doctor without notice of falsity. We cannot see any theory upon which the insured could hope to procure a valid contract of insurance when he knowingly makes such false statements in the application. The application containing these false statements, which insured signed, also contains this language:

"I hereby warrant all answers herein * * * true * * * I agree that any untrue answer to any question in parts one and two of this application shall immediately * * * render the certificate issued thereon null and void."

The false statements relate to facts which are material as a matter of law. Section 3300, G. S. 1913, does not apply to fraternal associations. Farm v. Royal Neighbors, 145 Minn. 193, 176 N. W. 489. Hence the element of intent to deceive and the increase of the risk are not here involved. Whether such agent had knowledge of the falsity or was in collusion with the insured, we conclude that such conduct on the part of the insured, as disclosed by this record, destroys the contract of insurance, and it follows that the defendant was entitled to a directed verdict.

Judgment reversed.