## THOMAS SHAUGHNESSY v. NEW YORK LIFE INSURANCE COMPANY.[1]

May 1, 1925.

No. 24,509.

**False answers to questions relative to medical consultations and treatment may avoid life insurance policy.**

1. It is the duty of an applicant for life insurance to give truthful answers to questions relative to medical consultations and treatment. Such matters are material to the risk, and, if the answers are false, the policy may be avoided; but the rule does not require the disclosure of consultations or treatment for slight or temporary ailments.

**Misrepresentation may be bar to recovery without intent to deceive.**

2. A material misrepresentation is a bar to a recovery, although it was not made with intent to deceive.

**Contract cannot be avoided by showing party did not know its contents, when.**

3. In the absence of fraud or mistake, a party to a contract who had the opportunity and ability to read it cannot avoid it by showing that he did not know what it contained.

**Information known to soliciting insurance agent is not attributable to insurer.**

4. Information possessed by an agent to solicit insurance is not attributable to the insurer, unless the information was imparted to the agent in the course of his agency. Answers to questions concerning previous or existing ailments, consultations and attendance by physicians, and the like, are beyond the scope of the functions of an agent whose only authority is to solicit insurance.

**Rule in respect to misconduct of agent inapplicable.**

5. Under the evidence there was no room for the application of the rule that when the applicant for insurance correctly states the facts to the insurer's agent and he, without knowledge or fraud on the part

[1]Reported in 203 N. W. 600.

of the applicant, mistakes them in the application, the insurer cannot shift the responsibility for the misconduct of its agent.

1. See Life Insurance, 37 C. J. pp. 463, 464, § 179.
2. See Life Insurance, 37 C. J. p. 464, § 179.
3. See Contracts, 13 C. J. p. 370, § 249.
4. See Life Insurance, 37 C. J. p. 531, § 262.
5. See Life Insurance, 37 C. J. p. 533, § 265.

Action in the district court for Hennepin county. The case was tried before Nye, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Mitchell, Doherty, Rumble, Bunn & Butler*, for appellant.

*John R. Coan*, for respondent.

LEES, C.

This is an action on a policy of insurance, by which the life of Pearl A. Shaughnessy was insured for the benefit of the plaintiff, her husband.

The defense was that Mrs. Shaughnessy made false answers to certain questions in the application, which materially affected the acceptance of the risk and the hazard assumed by defendant. The jury returned a verdict for plaintiff, and defendant has appealed from a denial of its motion in the alternative for judgment or a new trial.

The application was made on January 12, 1922. Among the questions answered were these:

"Have you ever consulted a physician for or have you ever suffered from any ailment or disease of the brain or nervous system?"

"Have you consulted a physician for any ailment or disease not included in your above answers?"

"What physician or physicians, if any, not named above have you consulted or been treated by within the last five years and for what ailments or ailment?"

Each question was answered in the negative.

The evidence shows conclusively that, at different times within a period of 6 months immediately preceding the making of the application, the insured consulted and was treated by Dr. Lewis Dunn, a Minneapolis physician. She was anaemic and afflicted with severe headaches caused by brain pressure. A Wasserman test showed a positive reaction. Dr. Dunn informed her that she was suffering from a syphilitic infection. She was in a hospital for observation and treatment for about a week on two different occasions. The brain pressure was relieved by puncturing the spine and withdrawing a portion of the spinal fluid. When she applied for the policy, the treatment she received had given her relief and she appeared to be in a normal state of health, but in the spring of 1922 she became partially paralyzed and died in June, 1923. An autopsy disclosed that the cause of death was a glioma, or tumor of the brain, which had not been caused by the infection indicated by the Wasserman test.

It was the duty of Mrs. Shaughnessy to give truthful answers to the questions relative to medical consultation and treatment. They were material to the risk and, if false, the policy may be avoided. The rule is one of general application, 3 Cooley, Briefs on Ins. 2156, 1 Bacon, Life & Acc. Ins. § 284, and is followed by this court, Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474, but does not require the disclosure of medical consultations or treatment for slight or temporary ailments. Ames v. N. Y. Life Ins. Co. 154 Minn. 111, 191 N. W. 274. Dr. Dunn was not consulted about a trivial or passing indisposition, and the case presented is one in which there was an undoubted misrepresentation of a matter which materially affected the risk. When such a misrepresentation is made, it is unimportant whether it was accompanied by an intent to deceive for, under the statute, a recovery is barred, although no fraud or deception was practiced or intended. Johnson v. Nat. Life Ins. Co. 123 Minn. 453, 144 N. W. 218; Olsson v. Midland Ins. Co. supra, Flikeid v. N. Y. Life Ins. Co. supra, page 127.

To avoid the effect of the misrepresentation, the respondent sought to show that, although Mrs. Shaughnessy signed the application, she

did not make the answers contained therein.  There was no fraud or mistake.  The claim is that Mrs. Shaughnessy did not read the application before she signed it.  She had the opportunity and the ability to read it, and, in these circumstances, the law does not permit a party to avoid his contract by showing that he did not know what it contained.  Central Met. Bank v. Chippewa County St. Bank, 160 Minn. 129, 199 N. W. 901; Quimby v. Shearer, 56 Minn. 534, 58 N. W. 155; Upton v. Tribilcock, 91 U. S. 45, 23 L. ed. 203; N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519, 529, 6 Sup. Ct. 837, 29 L. ed. 934.  In the case last cited, the court said:

"It would introduce great uncertainty in all business transactions, if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity."

In his brief respondent says:

"Respondent rests his case upon the policy and the application which together, under the provisions of section 3292 (G. S. 1913, now Sec. 3334, G. S. 1923) * * * and is not seeking to establish a different contract verbally made."

He contends that all the facts pertaining to the physical condition of the insured and her consultations with Dr. Dunn were fully known to appellant's agent, T. C. Snider, and introduced evidence from which the jury might find that Snider had been acquainted with the insured and her husband for several years; that he had frequently asked them to apply for insurance on the life of Mrs. Shaughnessy; that he knew she was receiving treatment from Dr. Dunn and that she was in a hospital in September, 1921; that he asked her husband about the nature of her illness and was told that he did not know; that on the day the application was written Snider was informed that Mrs. Shaughnessy had been in a hospital a short time before; that he called Dr. Pettit, the examining physician, to her home, and was present at the medical examination;

and that, without asking the questions relative to the physical condition of Mrs. Shaughnessy, Dr. Pettit inserted the answers. These answers were not true. If Mrs. Shaughnessy read them she must have known that they were untrue, and the question is whether the consequences can be avoided by showing that Snider knew the true state of facts and by imputing his knowledge to the company.

To attribute to the insurer information given to a soliciting agent, the information must have been imparted to the agent in the course of his agency. Inquiries respecting the health of the applicant, his previous or existing ailments, and consultations and attendance by physicians, are beyond the scope of the functions of an agent who merely solicits insurance; they pertain to matters dealt with by the medical examiner. For this reason, the knowledge which the jury might find Snider to have possessed is not attributable to the appellant. Bratley v. Brotherhood Am. Yeomen, 159 Minn. 14, 198 N. W. 128; Butler v. Michigan Mut. Life Ins. Co. 184 N. Y. 337, 77 N. E. 398; McCormack v. Security Mut. Life Ins. Co. 220 N. Y. 447, 116 N. E. 74. Whatever information Snider had related to a subject which lay beyond the scope of his agency, and the general rule is that, to charge the principal with constructive notice of facts known to the agent, the agent must have been one who had authority to deal with the matters which were affected by his knowledge. Trentor v. Pothen, 46 Minn. 298, 49 N. W. 129, 24 Am. St. 225. Had Snider been authorized to effect contracts of insurance and issue policies, a different question would be presented.

The doctrine of Kausal v. Minn. F. M. Fire Ins. Assn. 31 Minn. 17, 16 N. W. 430, 47 Am. St. 776; Otte v. Hartford Life Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 Am. St. 532, and Zimmerman v. Bankers Casualty Co. 138 Minn. 442, 165 N. W. 271, is not applicable. In these cases it was held that when the applicant correctly states the facts to the insurer's agent and he, without knowledge or fraud on the part of the applicant, misstates them in the application, the insurer cannot shift the responsibility for the misconduct of its agent. In the Zimmerman case, in referring to the rule, the court said that if the insured knew that untruthful statements were contained in the application, the insurer might avoid the policy even though the false statements were written by the agent.

No evidence was introduced showing that the facts were correctly stated to Dr. Pettit, or that he knew that Mrs. Shaughnessy had consulted Dr. Dunn or had received medical treatment from him.

The order appealed from is reversed and the case remanded with directions to grant appellant's motion for judgment notwithstanding the verdict.