## OLIVE E. ENGE v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.[1]

March 27, 1931.

No. 28,028.

*Snyder, Gale & Richards,* for appellant.
*P. A. Wells,* for respondent.

HILTON, J.

Defendant appeals from a judgment against it for $825.46.

Defendant is a foreign life insurance company licensed to do business in Minnesota, where it has a resident general agent authorized to employ and pay soliciting agents to take applications for life insurance.

One of such agents solicited and secured an application from Edwin Enge for a $408, weekly-premium insurance policy. Another such agent about a year later solicited and secured an appli-

[1]Reported in 236 N. W. 207.

cation for a like policy for $297. Each application was in turn sent to the main offices of the company and approved. The policies applied for were issued respectively on November 25, 1925, and December 22, 1926, and delivered to Enge. A copy of the application was not attached to either policy, nor did either policy make any reference thereto. Medical examinations were not required or had. Similar policies were also taken out on the wife and a baby (since deceased).

The weekly premium on the first policy was 20 cents and on the second policy 15 cents. These premiums were all collected by agents of the company until Enge's death from tuberculosis on July 29, 1927. Plaintiff (insured's wife) was the beneficiary named in each policy. Proper notices and proofs of death were made as required in the policies.

Defendant refused payment on the grounds that insured was not in good health at the time of the issuance of the policies; that he had been attended by a physician for a serious disease and complaint within two years prior to the dates of the delivery of the policies; that at all times subsequent to March 10, 1922, he had been a victim of pulmonary tuberculosis. The application did not contain a question relative to attendance by a physician within two years.

The policies made numerous references to the health of insured. Among others it contained the provision: "This policy shall not take effect unless upon its date the Insured shall be alive and in sound health." There were also statements therein that the agents were not authorized to waive any of its terms or conditions or to bind the company by making any promises not contained in the policy, and that the conditions and provisions of the policy constitute the entire contract.

A provision in the policy made it void if the insured "has been attended by any physician, within two years before the date hereof, for any serious disease, complaint or operation; or has had before said date any pulmonary disease, * * *." These provisions could only be waived "by an endorsement in the space for endorsements * * * signed by the secretary." The policies also had

noted thereon in large type: "Read Your Policy Carefully." In the application the agent wrote negative answers to all questions that referred to sickness or tuberculosis.

The case was tried to the court without a jury and findings of fact made. One of the litigated questions was as to the truthfulness of answers made by the insured to questions in the application. The court found that the insured truthfully answered all questions at the time the application was taken and that he told the soliciting agent who asked the questions and filled in the answers that he (Enge) had a "bum right lung"; that the soliciting agent assured him that that made no difference; that the soliciting agent filled out the application in his own handwriting and afterwards requested the insured to sign it without reading it to him or requesting or allowing him to do so.

With reference to the application for the second policy, the court found practically to the same effect; that there was no changed physical condition in insured from the time of the soliciting, issuance, and delivery of the first policy up to the time of the soliciting, issuance, and delivery of the second policy. It was also found that the second application was taken in the same manner as was the first, the acts and conduct of the agents being the same in each instance, except that the second agent referred to the first policy and urged the taking out of additional insurance for the protection of Enge's family and assured him it would be all right. These findings had sufficient support in the evidence and must stand. 1 Dunnell, Minn. Dig. (2 ed.) § 410.

Pertinent statutory provisions are G. S. 1923 (1 Mason, 1927) §§ 3334, 3370, 3396, 3398, 3399 and 3412.

This court in McAlpine v. Fidelity & Casualty Co. 134 Minn. 192, 158 N. W. 967, had occasion to comment on the kind of policy here involved, and what was there said is applicable here.

The soliciting agents who secured the applications of Enge were agents of the company and not agents of the insured. In Kausal v. Minnesota F. M. F. Ins. Assn. 31 Minn. 17, 20, 16 N. W. 430, 47 Am. R. 776, it is stated:

"On principle, as well as for considerations of public policy, agents of insurance companies, authorized to procure applications for insurance, and to forward them to the companies for acceptance, must be deemed the agents of the insurers and not of the insured in all that they do in preparing the application, or in any representations they may make to the insured as to the character or effect of the statements therein contained. This rule is rendered necessary by the manner in which business is now usually done by the insurers. They supply these agents with printed blanks, stimulate them by the promise of liberal commissions, and then send them abroad to the community to solicit insurance. The companies employ them for that purpose, and the public regard them as the agents of the companies in the matter of preparing and filling up the applications,—a fact which the companies perfectly understand. The parties who are induced by these agents to make applications for insurance rarely know anything about the general officers of the company, or its constitution and by-laws, but look to the agent as its full and complete representative in all that is said or done in regard to the application. And in view of the apparent authority with which the companies clothe these solicitors, they have a perfect right to consider them such. Hence, where an agent to procure and forward applications for insurance, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer and not to the insured. [Cases cited.]

"After the courts had generally established this doctrine, many of the insurance companies, in order to obviate it, adopted the ingenious device of inserting a provision in the policy that the application, by whomsoever made, whether by the agent of the company or any other person, shall be deemed the act of the insured and not of the insurer. But, as has been well remarked by another court, 'there is no magic in mere words to change the real into the unreal. A device of words cannot be imposed upon a court in place of an actuality of facts.' If corporations are astute in contriving such provisions, courts will take care that they shall not be used as in-

struments of fraud or injustice. It would be a stretch of legal principles to hold that a person dealing with an agent, apparently clothed with authority to act for his principal in the matter in hand, could be affected by notice, given after the negotiations were completed, that the party with whom he had dealt should be deemed transformed from the agent of one party into the agent of the other. To be efficacious, such notice should be given before the negotiations are completed. The application precedes the policy, and the insured cannot be presumed to know that any such provision will be inserted in the latter. To hold that, by a stipulation unknown to the insured at the time he made the application, and when he relied upon the fact that the agent was acting for the company, he could be held responsible for the mistakes of such agent, would be to impose burdens upon the insured which he never anticipated. Hence we think that if the agent was the agent of the company in the matter of making out and receiving the application, he cannot be converted into the agent of the insured by merely calling him such in the policy subsequently issued. *Neither can any mere form of words wipe out the fact that the insured truthfully informed the insurer, through its agent, of all matters pertaining to the application at the time it was made.* We are aware that in so holding we are placing ourselves in conflict with the views of some eminent courts. But the conclusion we have reached is not without authority to sustain it, and is, as we believe, sound in principle, and in accordance with public policy. [Cases cited.]"

The Kausal case was decided in 1883, the opinion being written by Mitchell, J. It involved a fire insurance policy, but the conclusions therein reached are applicable and binding in the instant case. The decision has been frequently cited with approval; it is now the well settled law of this state. 3 Dunnell, Minn. Dig. (2 ed.) § 4717.

The syllabus in the case of Otte v. Hartford L. Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532, reads as follows:

"When a foreign life insurance company has a general manager for this state, with authority to appoint canvassers to be paid by

the manager, such canvasser, while engaged in taking applications on blanks furnished by the company, is the agent of the insurer, and his acts within his apparent authority are binding upon it.

"Where such an application is made out by the solicitor, and the insured truthfully states the real facts, but the agent writes down his answers incorrectly, and the insured signs the application without knowledge of the fraud, in reliance upon the good faith of the agent, the insurer is not relieved from the liability contract in the policy issued thereon, even though there is a provision in the application attached thereto that the statements of the insured therein shall be considered as warranties.

"In such case the acceptance of the policy, with the application attached, does not require the insured to institute an investigation into its provisions, or the conditions upon which it was issued, to ascertain whether the agent has acted in good faith, since, under such circumstances, the insured may rely upon the presumption that he has been honestly dealt with by the insurer."

Knowledge of the agent that Enge had pulmonary tuberculosis became the knowledge of the company. It cannot escape liability because an untruthful answer as to the ailment was improperly written in the application by its agent without insured's knowledge and with no intention on insured's part to deceive the company. The insurer cannot shield itself behind the wrongdoing of its agent. The circumstance that the policy referred to in the Otte case, 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532, differed in form from those here involved and that the application was attached to the Otte policy is of no moment. The same rule and reasoning applies.

To the same effect is Mack v. Pacific M. L. Ins. Co. 167 Minn. 53, 59, 208 N. W. 410, 413, in which it is stated:

"If the authorized agent of the company incorrectly wrote this negative answer in the application and the insured was innocent thereof, then the misstatement was not that of the insured who had orally disclosed the truth but that of the insurer. The policy cannot be avoided on the theory that such statement is a material misrepresentation of the insured."

Also see Jepson v. Central Business Mens Assn. 168 Minn. 19, 209 N. W. 487; Whitney v. National Masonic Acc. Assn. 57 Minn. 472, 59 N. W. 943; Otte v. Hartford L. Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532; Zimmerman v. Bankers Cas. Co. 138 Minn. 442, 165 N. W. 271; Mack v. Pacific M. L. Ins. Co. 167 Minn. 53, 208 N. W. 410; Kearns v. North American L. & C. Co. 150 Minn. 486, 185 N. W. 659; Kelly v. Citizens M. F. Assn. 96 Minn. 477, 105 N. W. 675; 32 C. J. 1323, § 574, and 1333, § 601; 14 R. C. L. 1174; 3 Dunnell, Minn. Dig. (2 ed.) § 4681, and cases cited.

On principle and authority and in all good conscience the company is *estopped* from successfully asserting the defense interposed; it cannot thus escape liability under the policy. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L.R.A.(N.S.) 231, 7 Ann. Cas. 1144; Clark v. Dye, 158 Minn. 217, 226, 197 N. W. 209; Draper v. Oswego County F. R. Assn. 190 N. Y. 12, 82 N. E. 755; 32 C. J. 1343, § 618.

The suggestion that the agent and Enge "agreed" orally that, although the insured had pulmonary tuberculosis in an advanced state, his life would be insured notwithstanding, lacks merit. An agreement contemplates a meeting of the minds on a proposition. One cannot make an agreement alone; both must understand the agreement alike and must assent to that agreement. 2 C. J. 979. There was no agreement here. Enge answered the questions truthfully; he had the right to and doubtless did believe that the insurer's agent had inserted the correct answer, "yes," in the application with a statement as to the ailment. It was Enge's first experience in applying for insurance. He had no knowledge of what the provisions of the policy would be. After he had advised the agent that he had "a bum right lung," a statement by the agent that that made no difference would only confirm Enge's justifiable presumption that his answers were being correctly recorded in the application.

The knowledge secured by the agent taking the first application was knowledge of the company and continued as such up to and after the taking of the application for and the issuance of the second policy, and until Enge's death.

Defendant cites the case of Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600. It is in no way in conflict with the holdings of the cases above cited; it does not change the rule in Otte v. Hartford L. Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 A. S. R. 532, and Mack v. Pacific M. L. Ins. Co. 167 Minn. 53, 208 N. W. 410. In the Shaughnessy case the insured knowingly, wilfully, and intentionally gave wrong answers to questions for the purpose of deceiving the insurance company.

The insurance company (because of the knowledge of its agents) knew that Enge had pulmonary tuberculosis; that a negative answer in that regard appeared in the application; that Enge did not know that such answer had been inserted and had no intention of deceiving the company. With that knowledge it collected all the weekly payments until Enge's death. Payment cannot be avoided because the policy issued contained the statements upon which the defense is predicated.

We have carefully examined the cases cited by appellant; they are readily distinguishable from those that are here controlling. Full consideration has been given to all the arguments advanced; we find no grounds for reversal.

Judgment affirmed.

Stone, J. (dissenting).

The decision below, affirmed here, puts the case into this anomalous shape. The insured and the insurer's agent in effect agreed, *orally,* that, although Enge had pulmonary tuberculosis in an advanced stage, his life would be insured notwithstanding. The insured and defendant then contracted in *writing* that there should be no insurance at all unless upon the date of the policy the insured was "alive and in sound health." He was not in sound health, then nor at any moment of the determinative period.

I submit that the policy never became effective as a contract.

The insurer's promise was "not absolute, but conditional, * * * the existence of life and sound health in the insured on the date of the policy is the condition upon which the promise is made. It is the fact of the sound health of the insured which determines the

liability of the defendant, not his apparent health, or his or anyone's opinion or belief that he was in sound health." Murphy v. Metropolitan L. Ins. Co. 106 Minn. 112, 113, 118 N. W. 355, 356.

The short but complete answer to all the argument for plaintiff "is that the policy never issued as an obligation of the company because the intestate was not in 'sound health' when the application was made or when the policy issued." Carroll v. Metropolitan L. Ins. Co. 258 Mass. 249, 253, 154 N. E. 757, 759.

There is no question at all that the soliciting agent was the agent of the insurer. In devoting so much attention to proving what all admit, the real problem is overlooked, the failure being, it seems to me, to appreciate the fact that we are dealing with a condition precedent rather than a mere representation or warranty. The distinction between them "in connection with a contract is plain." Fondi v. Boston M. L. Ins. Co. 224 Mass. 6, 7, 112 N. E. 612, 613.

"A condition precedent, as known in the law, is one which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." Chambers v. N. W. Mut. L. Ins. Co. 64 Minn. 495, 497, 67 N. W. 367, 368, 58 A. S. R. 549. See also Redman v. Aetna Ins. Co. 49 Wis. 431, 4 N. W. 591; Anno. 59 A. L. R. 612.

"There is a general agreement * * * that a condition precedent is one that is to be performed before the agreement becomes effective." Mumaw v. Western & S. L. Ins. Co. 97 Ohio St. 1, 11, 119 N. E. 132, 135.

Except for the answers to the two or three questions involved, there is no suggestion that Enge was deceived as to the contents of the application. After all it was his application and not that of the agent. It was his offer to purchase insurance from defendant. The concluding stipulation of that offer, the one immediately preceding the signature of Enge, is that "this policy shall not take effect unless upon its date the Insured shall be alive and in sound

health and the premium duly paid." So the insured got just the kind of a policy for which he applied, and it becomes immaterial whether he read it or not.

Among other things the policy contains a provision making it incontestable after two years. The decision of the majority makes that provision surplusage, for as the policy is now construed it was incontestable from date.

Of course a condition precedent may be waived; but it is elementary in the law of insurance, as well as one of the conditions clearly appearing from both the applications and the policies now before us, that no agent had the power to waive a condition precedent. The insurer was acting not only within its simple rights, but also in plain obedience to public policy in taking every possible precaution to avoid insuring the lives of persons already afflicted with an incurable and fatal malady. But if the majority opinion is sound, any agent soliciting industrial insurance, where medical examination is not required, may compel the insurance company, in spite of its plain and definite refusal to be bound by anything. of that kind, to insure a life already doomed by cancer or other equally fatal disease.

In this case the simple fact is that the contract issued by defendant, as applied for and accepted by Enge, conditioned its going into effect upon the existence at its date of sound health. That condition was not fulfilled. In consequence there never was a contract, to say nothing of liability under it. The only cause of action is for the recovery of the premiums paid with interest.

Notwithstanding the technical argument about the supposed necessity for an actual meeting of the minds as between applicant and agent, I submit that the decision makes paramount and controlling what in legal result was a mere *oral agreement* between the insured and the insurer's agent, which the agent had no authority to make, as against the *written contract* of the insured and the insurer itself. Thus it seems to me we ignore in one ruling an elementary principle of the law of agency and another of that of contracts and evidence. It is still the law that an insurance policy

is a contract, not to "be altered or contradicted by parol evidence"; and that it is "reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered." Northern Assur. Co. v. Grand View Bldg. Assn. 183 U. S. 308, 361, 22 S. Ct. 133, 153, 46 L. ed. 213, 235.