EVELYN LAWIEN v. METROPOLITAN LIFE INSURANCE COMPANY.[1]

November 7, 1941.

No. 32,853.

[1]Reported in 300 N. W. 823.

*Gillette, Nye, Harries & Montague* and *William O. Bissonett,* for appellant.

*McCabe, Gruber & Clure,* for respondent.

HILTON, JUSTICE.

Action by Evelyn Lawien upon a life insurance policy written upon the life of her husband, Clarence Lawien, in which after verdict this appeal is taken by the insurer from an order denying judgment notwithstanding the verdict or for a new trial. As a defense to the action the insurer asserted material misrepresenta-

tion of fact which increased the risk of loss in that the application for insurance contained false answers by Lawien in response to certain medical questions.

The written application for life insurance with defendant was taken by M. C. Cox, its soliciting agent, on November 22, 1939, and consisted of three parts, respectively entitled A, B, and C. Part A, filled out by Cox, contained Lawien's answers to questions relating to personal history. Part B embodied questions relating to Lawien's physical condition answered by him as asked by Dr. S. N. Litman, defendant's medical examiner, on November 24, 1939. Part C contains Dr. Litman's conclusions as to Lawien's physical condition.

When completed, Part B contained an unqualified "No" as the recorded response of Lawien to question 18, which sought to ascertain whether the applicant had ever been afflicted with a specified list of diseases. But it is his answer to question 23 which is important here. That question asked: "What clinics, hospitals, physicians, healers or other practitioners, if any, have you consulted or been treated by, within the past five years? If none, so state?" The answer was "None."

The facts were otherwise. During September 1939 Lawien, being bothered by a severe pain in his abdomen, twice visited the Duluth Clinic, where he made full disclosures of his ailments to Dr. W. A. Coventry. Because of the peculiarity of the symptoms, Dr. Coventry was in doubt about its cause. He thought in October, when Lawien returned for further examination, that it had an anaphylactic origin caused by some food allergy, and in January 1940, when the pain recurred, that it had its basis in neurosis. At that time large doses of phenobarbital were prescribed, with apparent beneficial results. On April 18, 1940, about three months after receipt of the policy and almost five months from the date of application, Lawien died of carcinoma, a cancer of the stomach.

Plaintiff's claims are neither clear nor consistent. First, there is a claim that questions 18 and 23 were asked by Cox at the time when the application was taken. In response, Lawien is reported

to have said that he had been to the clinic in September for a checkup but had been found to be all right. Upon the stand Cox admitted that Lawien had told him about this visit. Plaintiff further supports this theory by testimony that she did not hear Dr. Litman ask these questions, although she was present at the examination and was in a position to hear their conversation. If Cox did ask these questions, then plaintiff contends that he either filled out the answers on Part B or he did not fill them out. If he did fill them out, then when Dr. Litman received the application Part B was partially complete with answers. But if Cox did not ask the questions, then Lawien volunteered the information. Cox testified to this effect.

Such elasticity of argument is but illustrative of the confusion which results where oral testimony is being used to refute the terms of written instruments. While courts generally are inclined to treat insurance contracts as special and do not always vigorously apply all principles of contract law, that tendency should not be allowed to overrun the bounds of legitimate exception.

Those rather exceptional situations where this court has allowed the written terms of insurance contracts to be disproved by oral testimony need not be reviewed at length. See Prosser, "The Making of a Contract of Insurance in Minnesota," 17 Minn. L. Rev. 567, 589-601. Plaintiff does not claim that her husband's truthful answers to questions 18 and 23 were falsely recorded by Dr. Litman. Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 236 N. W. 207; 16 Minn. L. Rev. 422. She rather seems to insist that her evidence made a jury issue of whether Lawien had misrepresented fact which authorized an avoidance of the policy by the insurer. Support for this view is said to be found in three legal propositions. First, it is said that the insurer was charged with knowledge of the prior consultation by virtue of Lawien's disclosures to Cox. Second, what Lawien failed to disclose about prior consultation was not a misrepresentation because everyone concerned thought that Lawien was suffering from a temporary or trivial ailment. Third, if there was a misrepresentation, there being no

intent to deceive the insurer, it did not increase the risk of loss because even with knowledge of the prior consultation, the insurer would nevertheless have written the policy.

We have concluded that it was error for the trial court to send this case to the jury. Plaintiff's evidence did not bring the case within any rule of law which would allow escape from her husband's recorded answers. Indisputably, all answers on Part B were written in the handwriting of Dr. Litman. He testified that all answers therein were recorded by him as given by Lawien in response to each question as read. Dr. Litman's lack of positive recollection of asking those two questions cannot be used to establish his failure to ask them. It was his practice always to ask all questions contained on Part B, and, because questions 18 and 23 were answered negatively, Dr. Litman was certain that they represented Lawien's answers. Opposing evidence went no further than to show that plaintiff did not hear him ask questions 18 and 23.

After the examination Lawien was given the application to read over and sign. In signing the application Lawien certified (1) that he had "read the answers to the questions in Part A and Part B hereof, before signing; (2) they have been correctly written, as given by me; (3) they are full, true and complete; and (4) there are no exceptions to any such answers other than as stated herein." By this certificate Lawien averred that all his answers were true, correct, and without exceptions. We need not consider here the legal effect of this certificate in relation to a case where the evidence shows that the falsification originated, not with the insured, but with the agent of the insurer. See 81 A. L. R. 833. For this case, where plaintiff's evidence at best provides a mere inference that Dr. Litman filled out negative answers to the disputed questions without asking them of Lawien, this court has already spoken adversely to plaintiff's position. In Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600, and Sorenson v. New York L. Ins. Co. 195 Minn. 298, 262 N. W. 868, we held that the insured, having the opportunity and ability to read, cannot avoid the effect of false representations in the application by oral

proof that he did not read it over before signing. Also, the Shaughnessy case is opposed to plaintiff's proposition that the company was charged with knowledge of the falsity of the representation because Lawien had disclosed to Cox the fact of prior consultation. As there indicated, questions relating to the physical condition of the insured ordinarily are within the province of the medical examiner, not the soliciting agent. That was the fact in this case.

Next for disposition is the claim that this case comes within the exception recognized by this court which excuses the failure of an applicant to make full disclosure where the prior consultation was for ailments which were trivial or temporary. In support of her claim that a jury determination of this issue was proper, plaintiff points to evidence tending to show that neither Dr. Coventry nor Lawien regarded the affliction as serious.

Under our statute, a misrepresentation, not made with intent to deceive the insurer, is not material nor authority for avoiding the policy unless it increases the risk of loss. Mason St. 1927, § 3370. This explains the reason why failure to reveal consultation for trivial ailments is not a ground for avoiding the policy. Rice v. New York L. Ins. Co. 207 Minn. 268, 290 N. W. 798; Schaedler v. New York L. Ins. Co. 201 Minn. 327, 276 N. W. 235; Northwestern L. Assn. v. Findley, 29 Tex. Civ. App. 494, 68 S. W. 695. However, this is not a case where that question is at all doubtful. Here, Lawien died from the very ailment for which he consulted the Duluth Clinic. Thus there can be no doubt that the matter misrepresented was material and did increase the risk of loss to the insurer. Pacific Mut. L. Ins. Co. v. Rosenthal, 122 N. J. Eq. 155, 192 A. 742; Thorner v. John Hancock Mut. L. Ins. Co. 164 App. Div. 34, 149 N. Y. S. 345; Van Woert v. Modern Woodmen, 29 N. D. 441, 151 N. W. 224. Clearly, the improper diagnosis of an ailment by a prior doctor or an underestimation of its danger by the patient does not in law or fact operate to transform serious diseases into trivial ailments. Lewis v. New York L. Ins. Co. 201 Mo. App. 48, 209 S. W. 625; New York L.

Ins. Co. v. Levin (8 Cir.) 102 F. (2d) 403; Pacific Mut. L. Ins. Co. v. Manley (D. C.) 27 F. (2d) 915, affirmed (5 Cir.) 35 F. (2d) 337; Bellestri-Fontana v. New York L. Ins. Co. 234 Mich. 424, 208 N. W. 427.

In the claim that the insurer would have issued the policy in spite of knowledge that there had been prior consultation, we find no merit. It is clear that the mere statement of an insurer that, with previous knowledge of consultation, it would not have issued the policy is not sufficient to establish the materiality of the representation or increase of risk. See Volunteer State L. Ins. Co. v. Richardson, 146 Tenn. 589, 244 S. W. 44, 26 A. L. R. 1270. Usually it is a question for the jury. Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 208 N. W. 410. Here, however, the materiality of the representation and the increase of the risk of loss are undeniable. Where subsequent developments establish that the nondisclosure of previous consultation did increase the risk of loss, it is not for the beneficiary to say that the insurer was not entitled to the opportunity of satisfying itself whether the purpose and result of the consultation were of such nature as to remove the applicant from the class of desirable risks. Anderson v. Aetna L. Ins. Co. 265 N. Y. 376, 193 N. E. 181; Bailey v. Pacific Mut. L. Ins. Co. 336 Pa. 62, 6 A. (2d) 770. Only through truthful disclosure could the insurer be supplied with the means of judging for itself the seriousness of the ailment and its effect upon the risk.

Order reversed with directions to enter judgment for defendant.