FREDA OREDSON v. WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY.[1]

December 26, 1941.

No. 32,895.

*Thomas Tallakson,* for appellant.
*Nelson & Mohan,* for respondent.

HILTON, JUSTICE.

After favorable verdict in an action upon a life insurance policy, the trial judge, relying upon Bratley v. Brotherhood of Am. Yeomen, 159 Minn. 14, 198 N. W. 128, granted defendant's motion for judgment notwithstanding the verdict. Despite evidence which showed that the soliciting agent had full knowledge that the application contained false answers, the trial judge was of the view that the cited case precluded this knowledge from being the knowledge of the defendant. The beneficiary appeals from the judgment.

As indicated, certain questions contained in decedent's application for insurance in defendant were incorrectly answered. Negative answers were recorded by the agent to questions whether decedent had ever been rejected for life insurance, whether he had suffered from, or consulted physicians about, diseases or injuries during the previous ten years, and whether he had ever had any other diseases or injuries. Affirmative response was recorded to the question whether the decedent was then in good health. Those answers were false. There had been prior rejections because of a heart disease which prevented decedent from being in good health either at the time of the application or when the beneficiary certificate was received.

The application for and certificate of insurance, also the constitution and by-laws of defendant, contain warranties, forfeiture, and nonwaiver clauses which singly and in concert have the purpose of relieving defendant from liability in cases where false answers have been given concerning an applicant's health. Also, provisions are included which prevent waiver of any conditions

or terms by any subordinate officers of defendant. Another clause states that knowledge or information acquired by an agent but not contained in the application shall not be knowledge to defendant unless communicated in writing to the home office.

It is thus very clear that defendant has taken comprehensive measures to protect itself against liability in cases like this where a policy of insurance has been issued in reliance upon the truthfulness of answers in the application. Our problem is to decide whether the evidence adduced by the beneficiary brought the case within any recognized rule of law which imposes liability irrespective of these many documentary precautions.

We may accept the following facts as established by the verdict. Defendant's representative called upon the Oredsons twice, the first time discussing the policy and the second taking the application. Upon both occasions he was informed that decedent already had been rejected three times for insurance because of heart disease. When the agent was informed of these results, he encouraged the Oredsons to permit him to make out an application emphasizing that decedent had a good employment record and for that reason the application had a good chance of going through. Thereupon plaintiff said that she had no objection to proceeding with the application so long as the agent put down the facts as they were. Assuring her "that he would take care of it," the agent made out the application in a rather hurried 20 minutes during the second interview.

So here we are presented with facts indicating that truthful disclosures were made by those interested in life insurance and falsified by the agent upon the application. Before proceeding further, it seems advisable to make brief reference to what may be taken as settled law in this state for such facts.

Since the leading case of Kausal v. Minnesota Farmers Mut. F. Ins. Assn. 31 Minn. 17, 16 N. W. 430, 47 Am. R. 776, which has been followed by numerous decisions (16 Minn. L. Rev. 422, 425) and recently was reëmphasized in Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 236 N. W. 207, an insurer is estopped from

proving that the application contains misrepresentations or warranties of fact where an applicant has given truthful answers which without his knowledge are falsified by the agent. Those cases which prevent a recovery upon the policy where the applicant has knowledge of the falsification (Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330; Zimmerman v. Bankers Cas. Co. 138 Minn. 442, 445, 165 N. W. 271) support the view that decision in these cases rests upon the foundation of equitable estoppel. Having knowledge of the falsity of the answers, the applicant cannot reasonably rely upon the agent. 16 Minn. L. Rev. 422, 425.

Respondent argues that these rules are inapplicable to mutual benefit organizations, for which there is said to be a separate classification. See Mason St. 1927, § 3478, which authorizes insertion of nonwaiver clauses into the contract. Further, respondent urges that the warranties and other representations of good health contained in the contract, together with the constitution and by-laws, stand opposed to recovery.

We are of the opinion, however, as we were in Enge v. John Hancock Mut. L. Ins. Co. 183 Minn. 117, 236 N. W. 207, that the doctrine of estoppel established by the Kausal case cuts through the artful device of words and into the core of an insurer's responsibility for the misconduct of its agents. No "mere form of words wipe out the fact that the insured truthfully informed the insurer, through its agent, of all matters pertaining to the application." Mitchell, J., in Kausal v. Minnesota Farmers Mut. F. Ins. Assn. 31 Minn. 17, 22, 16 N. W. 430, 431, 47 Am. R. 776.

This well established rule was not altered as to mutual benefit societies by the Bratley case, 159 Minn. 14, 198 N. W. 128. There a beneficiary certificate was issued to one who knowingly gave false answers to questions asked by a medical examiner. Although their falsity was known to the soliciting agent, there was no contention that the examiner falsified truthful answers of the applicant or even knew of the fraud. See Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600; Lawien v. Metro-

politan L. Ins. Co. 211 Minn. 211, 300 N. W. 823. Though certain of the language used in that case seems at first blush to suggest that a different rule applies to mutual benefit societies, we think that the case upon its facts represents no departure from settled rules. The case merely represents, as the following quotation will demonstrate, an application of the before discussed rule which applies where the applicant has knowledge of or knowingly gives false answers. Because the special findings of the jury "established * * * that the insured made false statements * * * of such character * * * [that] it necessarily follows that the insured knew them to be false, * * * we conclude that such conduct on the part of the insured * * * destroys the contract of insurance, and * * * defendant was entitled to a directed verdict." 159 Minn. at pp. 20, 24, 198 N. W. 130, 132. The fact that the soliciting agent "knew of the falsity" was said to be of no consequence in a case where "not only the agent, but the assured, knows" the statements are false. 159 Minn. at p. 23, 198 N. W. 132. Although the court might have said that the doctrine of estoppel was inapplicable upon the facts, yet it seems manifest that the case, following as it did Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330, a mutual benefit society case, and Zimmerman v. Bankers Cas. Co. 138 Minn. 442, 165 N. W. 271, cannot properly be cited as authority for the existence of a different rule for mutual benefit organizations.

Judgment reversed.

HOLT, JUSTICE (dissenting).

On the authority of Bratley v. Brotherhood of Am. Yeomen, 159 Minn. 14, 198 N. W. 128, and Lawien v. Metropolitan L. Ins. Co. 211 Minn. 211, 300 N. W. 823, the trial court, in my opinion, rightly ordered judgment notwithstanding the verdict.

STONE, JUSTICE (dissenting).

I must join Mr. Justice Holt in dissenting. Attention is respectfully invited to the fact that Oredson's application for insurance contained this: "I hereby certify, agree and warrant that

all the statements, representations and answers in this application are full, complete and true, whether written by my own hand or not."

Such a warranty, exacted from an applicant for insurance, is but a legitimate and wise measure of self-defense. An insurer violates no law in so attempting to protect itself against collusion between applicant and agent or even against the fraud of the latter.

There is no claim here that Oredson could not read. Therefore, there is no ground for a synthetic estoppel on behalf of his beneficiary.

[1]Reported in 1 N. W. (2d) 423.